# JONES *v.* RUTHERFORD.

---

PRACTICE; PROCESS; SERVICE BY PUBLICATION; EQUITABLE LIENS.

1. A check drawn by the Treasurer of the United States in settlement of a
   claim against the government is "personal property" within the mean-
   ing of section 105, D. C. Code [31 Stat. at L. 1206, chap. 854], pro-
   viding that publication may be substituted for personal service of
   process upon nonresidents of this District in suits to enforce liens
   against real or personal property within the District of Columbia.
2. A contract between an attorney and a person having a claim against the
   United States, whereby the attorney is expressly given a lien for his
   fee upon any check which may be issued by the United States in set-
   tlement of the claim, is not within the meaning of U. S. Rev. Stat. §
   3477, U. S. Comp. Stat. 1901, p. 2320, prohibiting the assignment of
   claims against the United States, or of any interest therein. '

No. 1558. Submitted June 6, 1905. Decided June 13, 1905.

HEARING on an appeal (specially allowed) from a decree
*pro confesso* of the Supreme Court of the District of Columbia

against a nonresident defendant, after service upon him by publication, which order he had previously moved to vacate on the ground that the court was without jurisdiction to make it. *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a special appeal allowed from a decree *pro confesso* rendered by the supreme court of the District, based upon service of process by publication.

The suit is one in equity for an injunction and receiver, and to enforce a specific equitable lien; and it arises from the following facts: The steamboats Champion and Robert Campbell were destroyed at Memphis, on the Mississippi river, in the year 1863, during our Civil War, while in the service of the government of the United States, into which they had been forcibly impressed. The Eureka Insurance Company of Pittsburgh in the State of Pennsylvania, had an insurance upon them, for which, in 1883, it made claim against the United States. That company then, however, had only a theoretical existence. It had practically passed away before that time, having previously made an assignment of all its property rights and effects to the appellant, William L. Jones, who was designated as its receiver, although he seems to have received his appointment, not from the action of any court, but from the voluntary act of the shareholders of the company, who, indeed, would appear to have abandoned the affairs of the company to him. In 1883, Jones, as receiver of the company, contracted with General Allan Rutherford, formerly third auditor of the Treasury, and then a practising lawyer in this city, to prosecute his claim, as receiver of the company, against the United States for the loss of the two steamboats, and agreed to give him as compensation for his professional services in such prosecution a sum equal to one third of the amount that might be allowed upon the claim, the payment of which was, in express terms, made a lien upon the claim, and upon any draft, money, or evidence of indebtedness that might be paid or issued therefor; and it was stipulated that

this agreement for compensation was not to be affected by
any services performed by the claimant himself, or by any
other attorneys employed by him.

By the efforts of Rutherford, an allowance of $5,000 on
account of the steamboat Champion was made by the accounting
officers of the Treasury Department on December 20, 1884, of
which Jones was duly notified, and for which he wrote his
acknowledgment to Rutherford; but an appropriation by Con-
gress for its payment was needed. This the Congress refused
to make. Subsequently the claim, with other similar claims, was
referred back to the accounting officers of the Treasury for re-
examination, and it was by them disallowed. Nothing seems
to have been done thereafter in the matter for several years, and
there is some indication that Rutherford abandoned the claim
as hopeless. But it appears to have been revived in 1903. In
that year Jones contracted with another attorney to collect the
amount for him for a compensation of 50 per centum of the
claim; and thereafter Congress was induced to appropriate
$5,000 in payment of the amount of the claim. This was by an
act of April 27, 1904.

In the meantime Allan Rutherford had died, and the appellee
had qualified as executrix under his will. The appellant, as she
alleges, having ignored her and the rights of Rutherford's estate,
she instituted the present proceedings by filing her bill in equity
in the supreme court of the District against William L. Jones,
as receiver of the Eureka Insurance Company, and the Treas-
urer of the United States, with whom the company itself was
afterwards joined by an amendment, for an injunction to pre-
vent Jones from receiving and the Treasurer from delivering
any draft or warrant on account of the claim, for a receiver
to receive such draft or warrant from the United States, and
to have an equitable lien declared upon such draft or warrant
and its proceeds in favor of the complainant.

There was a preliminary restraining order issued in accord-
ance with the prayer of the bill, and two receivers were ap-
pointed forthwith by the court to demand and receive the draft
from the United States. There was personal service of process

upon the United States Treasurer, and he appeared and demurred to the bill. What became of the demurrer does not appear from the record before us, but it is understood that it yet remains undisposed of. Seven days after the filing of the bill a general appearance was entered for Jones by his later attorney, who had prosecuted the claim, and this attorney asked, also, to be allowed to intervene for his own interest; and some proceedings were had in pursuance of this general appearance. But subsequently, upon allegations that Jones had not authorized any such appearance for him, it was stricken out at the cost of the attorney. Whereupon the complainant was compelled, if she would maintain her suit, inasmuch as Jones and the insurance company were nonresidents of the District, to resort to an order of publication against them.

An order of publication was accordingly issued. Jones and the Eureka Insurance Company failed to respond to it, and in due time a decree *pro confesso* was entered against both of them. Thereupon, however, but before the entry of the decree *pro confesso,* the appellant Jones, appearing specially for the purpose, moved the court to vacate the order of publication on the ground, as alleged, that the court was without jurisdiction to make such order under the bill of complaint; but the motion was overruled, and five days afterwards the decree *pro confesso* was entered. Then he sought and was allowed the present special appeal, which, while in the printed record it purports to have been taken from the decree *pro confesso,* must be assumed to have been intended to be taken from the order refusing to vacate the notice of publication.

*Mr. Arthur A. Birney,* for the appellant:

1. A claim against the United States has no locality, and the debt, if it exists, is not property of the creditor within the District of Columbia. *Vaughn* v. *Northup,* 15 Pet. 1, 6; *Mackey* v. *Coxe,* 18 How. 100, 105; *Wyman* v. *Halstead,* 109 U. S. 654.

2. Although Congress has provided for payment of a specified

sum to Mr. Jones, the money remains in the Treasury of the government, and is the money of the United States. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. *Buchanan* v. *Alexander,* 4 How. 20.

3. If this money due is not property of the appellant, but remains the money of the United States, the action is purely personal, and for a money demand only; and the defendant cannot be summoned by constructive service: *Pennoyer* v. *Neff,* 95 U. S. 714; *Ins. Co.* v. *Bangs,* 103 U. S. 441; *Davis* v. *Wakelee,* 156 U. S. 685; *Packers Steam Heater Co.* v. *Simonds,* 2 App. D. C. 290.

*Mr. Charles Cowles Tucker, Mr. J. Miller Kenyon,* and *Mr. Myer Cohen* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

As already stated, the appellant, William L. Jones, and the Eureka Insurance Company are nonresidents of the District of Columbia and residents of the State of Pennsylvania; and the question sought to be raised on the present appeal is whether they have any rights of property in the District of Columbia, or within the jurisdiction of the courts of this District, so as to subject them, under our Code, to be cited to appear here by notice of publication.

Section 105 of the Code of Law of this District [31 Stat. at L. 1206, chap. 854], which in the main is the same as section 787 of the previously existing Revised Statutes of the United States for the District of Columbia, itself taken from the act of Congress of February 22, 1867 (14 Stat. at L. 403, chap. 64), provides as follows: "Publication may be substituted for personal service of process upon any defendant who cannot be found, and who is shown by affidavit to be a nonresident, or to have been absent from the District for at least six months, or against the unknown heirs or devisees of deceased persons, in suits for partition, divorce by attachment, foreclosure of mort-

gages and deeds of trust; the establishment of title to real estate by possession, the enforcement of mechanics' liens and all other liens against real or personal property within the District, and in all actions at law and in equity which have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real or personal property within the jurisdiction of the court."

Under the contract between the appellant, William L. Jones, and the deceased, Allan Rutherford, the compensation to be paid to the latter for his professional services was in express terms made a lien upon the claim, and upon any draft, money, or evidence of indebtedness which might be issued therefor; and the purpose of the present suit is to enforce this lien and the lawful claim of Rutherford, if the same can be established, against such draft or evidence of indebtedness. It is very clear, therefore, that this suit falls within the class of suits wherein notice by way of publication is authorized, provided that the draft drawn in favor of the appellant can be regarded as personal property within the District of Columbia, or within the jurisdiction of the courts of the District. Now, why should it not be regarded as such personal property? It is drawn here by the Treasurer of the United States; it is physically present here; it is deliverable here; it has no other situs. It is true it may be made payable elsewhere, in New York, or New Orleans, or San Francisco, or at any other place where it may suit the claimant and the officers of the government; but it is not apparent how any such circumstance as that can effect the character of the paper as personal property in this District, while it is physically present here. It could become the subject of larceny in this District by being stolen here. It could become the subject of forgery by being fraudulently altered within the limits of the District. If it were improperly withheld by the Treasurer, the courts of this District would constitute the proper forum wherein its delivery could be enforced. Mandamus would lie to compel its delivery to the person entitled to receive it; injunction would lie to prevent its delivery to a person not entitled to receive it.

Let us assume the conditions to be changed in the present instance, and that the Treasurer had announced to the appellant his intention to deliver the draft to the appellee. Wherein would lie the remedy of the appellant, upon the assumption that he regarded such proposed action of the Treasurer as unjust and without warrant of law? Undoubtedly the remedy would be by just such a suit as the present in the courts of the District of Columbia,—not merely because the Treasurer is here, where he may be personally served with process, but because the draft, the subject-matter of controversy, is also here, and is capable of being delivered here to the person lawfully entitled to receive it. Why should not the same remedy lie in favor of the appellee, or of any person similarly situated?

The case before us, reduced to its ultimate analysis, is this: Two persons are claiming the same draft in the hands of the Treasurer, in which the United States have no longer any interest. The Treasurer, we may presume, is ready and willing to deliver it to the proper person. One of the two demands it because it is drawn in his favor, and he is the person ultimately entitled to receive the money. The other person demands it because, by reason of the convention between him and the other party, he is entitled to a lien upon it,—which means that he is entitled to receive and to hold it until a specified claim of his for compensation has been paid and satisfied. Both have the right of possession, but the right of the lien holder is for the time being the paramount right.

The right of the appellee to her lien, it may be remarked, is not contested at this stage of the proceedings, if the draft is properly subject to a lien. Such right is not affected by section 3477 of the Revised Statutes of the United States [U. S. Comp. Stat. 1901, p. 2320], forbidding the assignment of claims against the United States, or of any interest therein, for here there has been no such assignment. The agreement between the parties was that while the draft, as usual in all such cases, should be drawn in favor of the claimant, it should be delivered to the attorney for its prosecution and held by him until his fee

or charge thereon should be paid. There is nothing in the statute to forbid such an arrangement as this.

But the contention of the appellant is that "a claim against the United States has no locality, and the debt, if it exists, is not property of the creditor within the District of Columbia; and, in support of this contention, he relies upon various decisions of the Supreme Court of the United States, which are supposed to establish it.' We are of opinion that the proposition put forward by the appellant has no application to the present case, and that the decisions in question have no reference to such a condition as exists here. There is no question here of any claim against the United States by anyone, or of any indebtedness due by the United States to anyone. The claim and the indebtedness have been fully settled. The United States have drawn their draft for the payment of the indebtedness, which is the usual mode of payment, and they are ready to deliver that draft. It is not a question whether a claim against the United States, or an indebtedness by the United States, is property here or elsewhere. The question is as to the right to the manual possession of a draft drawn by the United States, and ready to be delivered to the person lawfully entitled to its possession. The question is whether that draft is property within the District of Columbia as between two rival claimants for the possession of it. The possession of this draft is the matter in controversy between the parties, and we are of opinion that it is property in this District. It certainly has no other situs, and if it is property at all it is property in the District of Columbia.

The cases of *Vaughan* v. *Northup*, 15 Pet. 1, 10 L. ed. 639; *United States use of Mackey* v. *Coxe*, 18 How. 100, 15 L. ed. 299; and *Wyman* v. *Halstead* (*Wyman* v. *United States*) 109 U. S. 654, 27 L. ed. 1068, 3 Sup. Ct. Rep. 417, cited on behalf of the appellant, are readily distinguishable from the present case. In the case of *Vaughan* v. *Northup*, suit was sought to be maintained in the District of Columbia by local creditors of a deceased person, an inhabitant of Kentucky during his lifetime, against an administrator duly appointed in that State, who had received from the United States a sum of money due

to the deceased for military services. The contention on behalf
of the local creditors was that the money due to the deceased
from the United States was local assets at the seat of govern-
ment. This contention was repudiated; and it was held that
the local creditors could not maintain suit against the foreign
administrator outside of the jurisdiction of the court which
appointed him.

In the case of *United States use of Mackey* v. *Coxe, supra,*
the suit was against the surety on an administration bond by
persons entitled to distributive shares of the estate of a deceased
person. Administration had been duly granted in the Cherokee
nation. The deceased had a claim against the United States.
An agent of the administration came to Washington to collect
the claim. It was suggested to him by the officials of the
Treasury Department to take out letters of administration in
this District. He did so; and the amount of this claim was
paid to him. As administrator in the District, he immediately
turned over the fund to himself as agent for the administrator
in the Cherokee country. The fund was lost in some way; and
suit was instituted upon the administration bond given in this
District. It was held that the suit could not be maintained.

In the case of *Wyman* v. *Halstead, supra,* it was sought, by
proceedings in mandamus in the District of Columbia, to compel
the Treasurer of the United States to pay an administrator ap-
pointed in the District of Columbia the amount of some drafts
drawn to the orders of certain persons, deceased at the time of
the suit, who were at the time of their death residents of the
State of Tennessee, wherein administration was also had on their
estates at the same time. The Treasurer refused to pay the
drafts without the indorsement of the administrators in
Tennessee, and he was sustained in his action by the Supreme
Court of the United States.

These are all plainly cases of rival administrations, wherein
it was held that administration at the place of death of the de-
ceased person was the proper and paramount administration
which the Treasury officials should recognize, and that, in an-
tagonism to such administration, there was no room at the seat

of government for a rival, or a different, administration by reason of any supposed situs of assets in this District. Plainly there is no case of this kind before us here.

It was said by Mr. Justice Story in the case of *Vaughan* v. *Northup* and quoted by Mr. Justice McLean in the case of *United States use of Mackey* v. *Coxe,* each delivering the judgment of the court: "The debts due from the government of the United States have no locality at the seat of government. The United States, in their sovereign capacity, have no particular place of domicil, but possess, in contemplation of law, an ubiquity throughout the Union, and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicil. On the contrary, the administrator of a creditor of the government, duly appointed in the State where he was domiciled at his death, has full authority to receive payment and give a full discharge of the debt due to his intestate in any place where the government may choose to pay it. *  *  *  If any other doctrine were to be recognized, the consequence would be that, before the personal representative of any deceased creditor, belonging to any state in the Union, would be entitled to receive payment of any debt due by the government, he would be compellable to take out letters of administration in this District for the due administration of such assets. Such a doctrine has never yet been sanctioned by any practice of the government, and would be full of public, as well as private, inconvenience. It has not, in our judgment, any just foundation in the principles of law."

A careful consideration of this enunciation of the Supreme Court will show that it holds merely that an indebtedness by the United States to a deceased person does not create such a status of assets at the seat of the Federal government as to require the issue of letters of administration here to procure its collection, and that payment of such indebtedness is properly made to the administrator at the place of domicil of the deceased. In our opinion it does not at all affect the question now before us. Here there is no question of different administrations, or of principal and ancillary administration, or of any administra-

tion whatever. There is question simply of the right to the present possession of a draft, and of the right to hold it as security until a certain obligation or liability is discharged. The adverse claimants are both *sui juris* and may sue and be sued anywhere, wherever they are found, and the present custodian of the draft, the Treasurer of the United States, can properly be made amenable for the disposition of it only to the courts of the District of Columbia.

The appellant, by giving a lien upon the draft, authorized Rutherford to receive it and to hold it, and to take all the necessary and proper steps, by suit or otherwise, to reduce it into his possession. He thereby gave to the instrument, even if it did not otherwise have it, a status and a situs in the District of Columbia, which it is proper to enforce by suit. He cannot be permitted to nullify that lien by requiring the present delivery of the draft to himself.

We are of opinion that the court below was right in issuing the notice of publication in this case, and that its order to that effect should be affirmed with costs. And it is so ordered.

*Affirmed.*

