# NATIONAL SURETY COMPANY *v.* LANE.

---

GOVERNMENT CONTRACTS; PRINCIPAL AND SURETY; BONDS; BANKRUPTCY.

Where the surety on the bond of a defaulting and bankrupt contractor for public work, to whom would be due a large sum on completion of the work, including a retained percentage for completed work, after obtaining an agreement by another contractor to complete the work for the unearned part of the contract price, the retained percentage, and a specified sum in addition, which represented a loss to the surety, such contractor, agreeing to look to the payments to be made by the United States for his compensation beyond the specified sum to be paid by the surety, entered into a contract with the United States to complete the work under the terms of the original contract, whereupon the new contractor prosecuted the work to completion,—

it was *held* that as between the surety and the trustees in bankruptcy of the defaulting contractor the surety was entitled to receive the retained percentage from the United States.

No. 2903.   Submitted March 20, 1916.   Decided April 24, 1916.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity for an injunction and the appointment of a receiver.

*Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from a decree in the supreme court of the District denying appellant's right to a percentage retained by the United States under a contract in which appellant, National Surety Company, was the surety.

On November 14, 1905, Orman & Crook, of Denver, Colorado, agreed with the United States to construct a dam and appurtenances and 17½ miles of canal near Belle Fourche, South Dakota.   The work was in three schedules, the estimated contract price (the actual cost being based upon quantity of materials furnished and work done), at the unit price agreed upon, was as follows:   Schedule No. 1, $879,164; schedule No. 2, $70,129.75; schedule No. 3, $54,005.50, aggregating $1,003-299.25.   The bond of the contractors was in the sum of $120,-000, with the National Surety Company, appellant here, as surety.   The contract provided for the deduction of 20 per cent from the estimated value of the work done by the contractors, until the retained percentage had reached $40,000 under schedule No. 1 and $5,000 each under schedules Nos. 2 and 3.   While this retained percentage, under the strict letter of the contract, was to become the absolute property of the United States in the event of a default by the contractor, there is no dispute that it was to be held merely as additional security and indemnity. See *Quinn* v. *United States,* 99 U. S. 30, 25 L. ed. 269.   The contract further gave the government, through the Secretary of

the Interior, the right upon proper notice for cause to suspend the operation of the contract, and take possession of all machinery, tools, and materials on the work, and use the same to complete the work, or to employ other parties to carry the contract to completion and charge the excess cost to the contractors and their sureties.

In January 16, 1908, Orman & Crook went into voluntary bankruptcy, and their contract was suspended by the Secretary of the Interior, under the provision above mentioned. They then had received $310,111.91, leaving an unearned balance in the hands of the government estimated at $693,187.34, plus $45,000 retained percentages, schedule No. 3 having been completed and holdbacks released. In addition to these two sums, the government held $7,050, which had been assessed as penalties for delay. Recognizing its liability, the surety company immediately endeavored to find a contractor who would complete the work, and on April 2, 1908, entered into a conditional contract with Hayes Bros. Company and Peters, Wisconsin parties, under which those parties agreed with the surety company that they would complete the work for the unearned part of the contract price under the Orman & Crook contract, the $45,000 held back, the $7,050 penalty, and $14,050 to be paid by the surety company. The surety company agreed to assign all warrants, and to pay to the contractors all money received from the United States within five days after warrants or payments were received by the surety company, and, in addition, to pay in instalments at times stated the $14,050. The contract further provided that the surety company should not be liable to the contractors for any sum greater than the $14,050. It was further provided, however, that should the United States fail to enter into contract with the surety company on or before April 10, 1908, for the completion of the work and for the payment of the $45,000 held back, the contract under consideration should "immediately cease and become null and void."

Thereupon the surety company took up the matter with the proper officials of the government, and on April 8th, following,

entered into a contract with the government, through the Secretary of the Interior, agreeing to complete the work under the Orman & Crook contract, the government undertaking to pay for the work to be done as provided in the original contract, and, upon the completion of the work, to pay to the surety company the percentage theretofore retained; that is to say, the $45,000.

The work then was prosecuted to completion by the second contractors, and the question arose whether the balance of this retained percentage belonged to the trustee in bankruptcy of Orman & Crook or to the surety company. The surety company finally filed its bill, praying for an injunction and the appointment of a receiver. The learned trial justice found from the evidence "that the moneys to be paid to Hayes Bros. Company and Peters  *  *  *  represented the best, that is, the lowest price for which the plaintiff company (the surety company) was able to secure the completion of the work left uncompleted by Orman & Crook, and that it exhibited diligence and good faith towards Orman & Crook and their trustee in bankruptcy, the defendant Dayton, in securing this price for the completion of the work." The court, however, being of the opinion that the United States had no right, power, or authority to undertake to pay this retained percentage to the surety company unless it appeared that it had actually expended the amount in the completion of the work, or had become liable to any other person to pay the same, and, finding that it had not become so liable, ruled that this percentage belonged to the trustee in bankruptcy of Orman & Crook.

*Mr. Bynum E. Hinton* for the appellant:

1. The Secretary of Interior had the right to make the contract of April 8, 1908; the completing surety completed for itself, and not for principals; the surety had the right to have the funds held until it was completely exonerated, and appellants' attorneys' fees were proper allowance out of fund. *Beckham* v.

*Duncan,* 9 S. E. 1002 (Va.); *Board of Education* v. *First National Bank,* 70 Hun, 520; *Des Moines Bridge & Iron Works* v. *Plane,* 143 N. W. 866; *Delaware, Lackawanna & West. R. R.* v. *Oxford Iron Co.* 38 N. J. Eq. 151; *Gresham* v. *Ware,* 79 Ala. 192; *Guttenberg* v. *Vassel,* 74 N. J. L. 553; *Hoppes* v. *Hoppes,* 123 Ind. 397; *Iric* v. *Black,* 2 C. E. Gr. (17 N. J. Eq. 189); *Kempner* v. *Duley,* 60 Ark. 526; *Kirkman* v. *Bank,* 2d Cald. 397, 407; *Kidd* v. *Hurley,* 54 N. J. Eq. 177; *King* v. *Baldwin,* 17 Johns. (S. C.) 384, 395; *Leggett* v. *Humphries,* 62 U. S. (21 How.) 66, 76; *Lazaraus* v. *Bank,* 72 Tex. 354; *McChesney* v. *Syracuse,* 75 Hun, 503; *Moore* v. *Topliff,* 107 Ill. 241; *Moffitt* v. *Roche,* 77 Ind. 48; *Masury* v. *Westwater Co.* 94 Ill. App. 30; *Neimsewicz* v. *Gahn,* 3 Paige, 614; *Philadelphia & Reading R. R.* v. *Little,* 41 N. J. Eq. 519, 529; *Prairie State Bank* v. *United States,* 164 U. S. 230; *St. Peter's Catholic Church* v. *Vannote,* 66 N. J. Eq. 78; *Sheppard* v. *Conley,* 9 N. Y. Supp. 777; *Varti* v. *Underwood,* 18 Barb. 561; *Wright* v. *Morley,* 11 Ves. 12, 22; *Wright* v. *Simpson,* 6 Ves. 714; *Wright* v. *Austin,* 56 Barb. 13; *Wilcox* v. *Todd,* 64 Mo. 388; *Weiler & Bro.* v. *Thomas,* 114 N. C. 197; *Winter* v. *Hazen-Latimer,* 42 D. C. App. 469; *Weisemair* v. *Buffalo,* 57 Hun, 48; 32 Cyc., 234; 1 Story, Equity, sections 638, 639.

2. The surety company were entitled to recover because subrogated to the rights of the government under the Orman & Crook contract. *Motley* v. *Harris,* 1 Lea. (Tenn.) 577; *Prairie State Bank* v. *United States,* 164 U. S. 227; *Henningsen* v. *United States Fidelity & Guaranty Co.* 208 U. S. 410, 28 Sup. Ct. Rep. 389; *Hardaway* v. *National Surety Co.* 211 U. S. 552; *American Waterworks & Guarantee Co.* v. *Home Water Co.* 115 Fed. 171, 182; *Reed* v. *Pauly,* 121 Fed. 652; *Title Guarantee & Surety Co.* v. *Dutcher,* 203 Fed. 167; *Illinois Surety Co.* v. *Galion,* 211 Fed. 161; *In re Scofield Company,* 215 Fed. 45.

*Mr. Paul V. Keyser, Mr. John L. Hargrove,* and *Mr. James S. Easby-Smith,* for the appellee, in their brief cited:

*Ætna Life Insurance Co.* v. *Middleport,* 124 U. S. 534; *Campbell* v. *Macomb,* 4 Johns. Ch. 534; *Del., Lac. & W. R. R. Co.* v. *Oxford Iron Co.* 38 N. J. Eq. 151; *Farrelly* v. *Schaettler,* 128 N. Y. S. 157; *First National Bank* v. *City Trust, S. D. & Surety Co.* 114 Fed. 529; *Gray* v. *Bowles,* 18 N. C. 437; *Guttenberg* v. *Vassal,* 74 N. J. L. 553; *Hardaway* v. *National Surety Co.* 150 Fed. 465, affg. 211 U. S. 552; *Hollinsbee* v. *Ritchey,* 49 Ind. 261; *Labbe* v. *Bernard,* 196 Mass. 551; *Masury* v. *Westwater,* 94 Ill. App. 30; *Prairie State Bank* v. *United States,* 164 U. S. 227; *Quinn* v. *United States,* 99 U. S. 30; *Reid* v. *Pauly,* 121 Fed. 652; *St. Peters Catholic Church* v. *Vannote,* 66 N. J. Eq. 78; *Smith* v. *Staples,* 49 Conn. 87; *Title G. & Surety Co.* v. *Dutcher,* 203 Fed. 167; *United States* v. *Rundle,* 100 Fed. 400; *United States* v. *United States Fidelity Co.* 155 Calif. 415; *Weisemair* v. *Buffalo,* 57 Hun, 48; *Winter* v. *Hazen-Latimer Co.* 42 App. D. C. 469. 1 Brandt, Suretyship, sec. 247; 1 Brandt, Suretyship, sec. 233; 1 Brandt, Suretyship, sec. 338; 2 Brandt, Suretyship, sec. 759; Sheldon, Subrogation, sec. 105.

Mr. Justice ROBB delivered the opinion of the Court:

As we view the question involved, it is a comparatively simple one. Orman & Crook defaulted. Had they completed their contract, the $45,000 retained would have belonged to them, but, by reason of their default, it became liable to be applied in reduction of the damages resulting therefrom. What followed? The surety company, being called upon, cast about in good faith to secure the completion of the work and conditionally contracted with new parties to carry it on. The validity of this contract was expressly made to depend upon the execution of a similar contract with the surety company by the United States. That contract was duly executed, and in it the United States agreed to pay the surety company the balance to be earned under the original contract and this retained percentage. The trial court has found that even then the surety

company would suffer a loss of $14,050; in other words, that to complete the work of the defaulting contractor it was necessary to pay someone not only the amount yet to be earned under the original contract and the retained percentage, but $14,050 in addition. Because the second contractors, however, relying upon the contract between the United States and the surety, agreed to "look to the payments to be made by the United States of America for their compensation for all work done," beyond the value of the $14,050 which the surety was to contribute, it is insisted that there was no consideration for the agreement to pay the surety this retained percentage.

In *Prairie State Nat. Bank* v. *United States,* 164 U. S. 227, 41 L. ed. 412, 17 Sup. Ct. Rep. 142, the bank, having loaned a contractor money which it contended had been used in the performance of a contract, claimed as against the surety under the contract a balance in the hands of the government which represented a retained percentage, as in this case. When the contractor defaulted, the surety assumed the completion of the contract at a loss of about $15,000. The court said: "Hitchcock's [the surety's] right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor (the United States) was capable of asserting against its debtor Sundberg & Company, [the contractors], had the security not satisfied the obligation of the contractors, and one of such remedies was the right based upon the original contract to appropriate the 10 per cent retained in its hands. If the United States had been compelled to complete the work, its right to forfeit the 10 per cent and apply the accumulations in reduction of the damage sustained remained. The right of Hitchcock to subrogation, therefore, would clearly entitle him when, as surety, he fulfilled the obligation of Sundberg & Company to the government, to be substituted to the rights which the United States might have asserted against the fund. It would hardly be claimed that, if the sureties had failed to avail themselves of the privilege of completing the work, they would not be entitled to a credit of the 10 per cent reserved in reduction of the

excess of cost to the government in completing the work beyond the sum actually paid to the contractor, irrespective of the source from which the contractor had obtained the material and labor which went into the building." The court further pointed out that a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the contract, "is as much for the indemnity of him who may be guarantor of the performance of the work, as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, — is amply sustained by authority." See also *Hardaway* v. *National Surety Co.* 211 U. S. 552, 53 L. ed. 321, 29 Sup. Ct. Rep. 202.

Coming back to the facts of the present case, the original contractor having defaulted, the surety entered into a contract with the government for the completion of the work. Recognizing the fact that the cost of such completion would be in excess of both the current payments and the amount retained, and recognizing the equitable interest of the surety in such retained sum, the government agreed to pay such amount to the surety upon completion of the work. So long as the surety was acting in good faith, it was entirely immaterial to the government whether, under the contract between the surety and the parties who actually were to complete the work, those parties agreed that the surety should not be liable for the payment of this amount. It formed a material part of the consideration for their contract with the surety. In fact, as we have seen, that contract was to be void unless the government should enter into a contract with the surety, by the terms of which this retained amount was to be paid to the surety. When we come to consider the fact that in order to secure the completion of this work it was necessary for the surety actually to pay $14,050 in addition to current payments, the amount retained, and the amount held as a forfeiture, it becomes still more important that we should look to the substance and effect of these contracts, and not, by over-re-

finement, avoid a proper and legitimate contract between the government and the surety. Under that contract, which it is conceded was fair and just, the government agreed to pay the surety this $45,000, as unquestionably, under the facts, it had a right to do. The surety company had arranged for the performance of the work, and agreed to assign all warrants, and to pay over all moneys received from the United States, including this retained sum, and in addition to pay out of its own funds $14,050. This contract not only was devoid of all speculative features, but, on the contrary, under its provisions the surety was to sustain an actual loss of over $14,000. The work has been performed and this $45,000 earned, not by the original contractor, but by the surety who, through its contractor, performed the work. The fact that when paid it will become the duty of the surety, under its contract with Hayes Bros. Company and Peters, to pay it to them, is no concern of the original contractors or their trustee in bankruptcy. The material question is, Was the expenditure of this sum necessary to complete the work? Had the government entered into a contract with Hayes Bros. Company and Peters, it would have been its right and duty to have applied this sum in reduction of the excess of the cost of completing the work beyond the current payments under the original contract. But the government preferred to deal directly with the surety, as it had a right to do, and under the resulting contract the surety became responsible for the completion of the work.

Having in mind that this is an equitable proceeding, and looking at the substance of the transactions involved, as in duty we are bound to do, we have no hesitancy in ruling that the $45,000 holdback should have been paid to the surety.

The decree must be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                    *Reversed and remanded.*

A petition for a rehearing was denied May 12, 1916.