**PHILADELPHIA NAT. BANK et al. v.**
**McKINLAY et al. \***
**No. 6181.**

United States Court of Appeals for the District of Columbia.

Argued May 14, 15, 1934.

Decided June 18, 1934.

Bynum E. Hinton and Alexander M. Heron, both of Washington, D. C. (Edward H. Cushman, of Philadelphia, Pa., of counsel), for appellants.

Dean Hill Stanley, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellants filed their bill of complaint in the Supreme Court of the District of Columbia against Frank T. Hines, Administrator of Veterans' Affairs, and William H. Woodin, Secretary of the Treasury, and joined with them as codefendants McKinlay, trustee of L. Balkin Company, Union Indemnity Company, Beckner and Levy, receivers of the Union Indemnity Company, New York Indemnity Company, Van Schaick, superintendent of insurance of New York, and International Reinsurance Corporation. The purpose of the bill was to obtain an order directing Hines, as Administrator, and Woodin, as Secretary of the Treasury, to

*Writ of certiorari denied 55 S. Ct. 96, 79 L. Ed. ——.

pay or cause to be paid to the receiver to be appointed by the court, the sum of $68,244.86, the balance determined to be due under a construction contract between the Balkin Company and the United States for the construction of the Veterans' Hospital at Canandaigua, N. Y. The bill recites that the contract was entered into May 23, 1931, and provided that, if the Balkin Company refused or failed to prosecute the work on the buildings with such diligence as would insure its completion within a specified time, or failed to complete the work within such time, the United States might by written notice terminate its right to proceed with the work; that the contractor gave the bond required by law (the Hurd Act [40 USCA § 270]), the New York Indemnity Company becoming surety, and in turn reinsuring its liability in part with International Reinsurance Corporation and Union Indemnity Company. The bill then further recites that at the time the bond was given the Balkin Company executed an assignment to the surety of all deferred payments or moneys that might be then due or thereafter become due and payable to it at the time of any breach or default in the contract, the same to be credited upon any loss occasioned to the surety.

The Balkin Company entered into the performance of the contract, but failed to prosecute the work, and on March 30, 1932, the United States terminated the contract and declared the Balkin Company in default. Notice of the default was given to the New York Indemnity Company, which company had then come under control of the Union Indemnity Company, and the surety thereupon undertook the performance of the balance of the contract under an agreement with the United States, whereby the completion of the work was upon consideration that the United States would make payment to the surety as the work progressed of the balance of the contract price, including retained percentages, subject, however, to the limitation that such payment to the surety by the United States should not exceed the cost incurred by the surety in completing the work. The United States paid the surety $130,290.17, all of which, plus the further sum of $78,590.15, the surety expended in the performance of the work. Upon the completion and acceptance by the United States of the buildings, there was due, as we have seen, from the United States, on account of the total contract price and extras, the sum of $68,244.86.

Appellants are six corporations (Philadelphia National Bank, a corporation, assignee, etc.; Truscon Steel Company, a corporation; McClintic-Marshall Corporation, a corporation; Buffalo Steel Company, a corporation; Gray Knox Marble Company, a corporation; and Federal Seaboard Terra Cotta Corporation, a corporation), which entered into contract with the Balkin Company, prior to its default, to furnish all of the various materials and labor in the prosecution of the construction of the work. The materials and labor furnished by four of them were furnished to the Balkin Company prior to its default. Two of them, in addition, furnished labor and materials to the surety after default by the original contractor.

The bill recites that there are approximately $150,000 due to persons who furnished labor and materials on the buildings; some of these persons having furnished labor and material to the original contractor, some to the completing surety, and some to both. The purpose of the bill, in addition to impounding the fund in the hands of a receiver, is to have the court ascertain the persons who furnished labor and material on the buildings and whose debts are unpaid and for the distribution of the fund on a pro rata basis among such creditors.

On January 31, 1933, and prior to the institution of this suit, the Balkin Company was adjudged a bankrupt, and Robert W. McKinlay, one of the appellees, was elected trustee. This appellee moved to dismiss the bill on the ground that, the Balkin Company having been adjudicated a bankrupt, the Supreme Court of the District of Columbia had no jurisdiction to administer for the benefit of the creditors of the Balkin Company the amount owing by the United States upon the contract originally between the United States and the Balkin Company. Appellee, to sustain his position, relies largely upon our decision in American Surety Company v. Owens, Trustee in Bankruptcy, 22 App. D. C. 210, 66 F.(2d) 190, but, in our view, the facts in that case clearly distinguish it from the case under consideration. In that case there was a fund due by the United States on account of work done by a contractor, which was admittedly insufficient to pay the labor and material claims owing on account of the work. The contractor had filed a voluntary petition in bankruptcy, and a trustee had been appointed, and thereafter the surety filed its bill in the District Supreme Court against the

contractor and the Secretary of the Navy, to enforce an equitable lien on the retained pay of Gray, as contractor for the work. The question was whether the money should be paid to the bankrupt's trustee or to the surety. We held it should be paid to the bankrupt's trustee. But the basis of our decision in that case was that it was admitted the fund belonged to the bankrupt estate, and so we held that, until the claims of the creditors, who had done work and furnished material, had been satisfied, the surety had no claim to the fund, and likewise that, the bankrupt's trustee being entitled to the fund, the bankruptcy court had jurisdiction to ascertain liens against it or rights to it. But the facts just recited are entirely different from the facts we find here. In the Owens Case the contractor completed the work, and there was no question that, had bankruptcy not intervened, he would have been entitled to demand and receive the fund from the United States. When bankruptcy did intervene, title to all of the property of the bankrupt, wherever situated, vested in his trustee, and thereafter the bankruptcy court had exclusive jurisdiction to control and administer the estate for the benefit of the creditors of the bankrupt. In this case the bankrupt defaulted in the performance of the contract, and its surety thereupon entered into a new contract with the United States, in which it undertook to complete the work and the United States, on its part, to pay so much of the contract price and the retained percentages as was necessary to reimburse it.

If this subsequent contract had been carried out, and the entire balance of the fund due under the contract paid to the surety, it is obvious there would have been no fund here for distribution to anybody, and in that case the materialmen and laborers who furnished work and labor on the job would have been remitted to their claim against the surety under the provisions of the statutory bond, but presumably because about the time of the completion of the work, or at least before the final payment was made by the United States, the surety and its coinsurers all having become insolvent, the Treasury prudently retained the sum it now has on hand. In the view we take of this case, that sum is earmarked with the claims of all persons furnishing supplies and labor on the contract, and this is true because, irrespective of the statutory bond, those persons who furnish labor and do work on a government project have an equitable lien on the fund, for the payment of their work and labor, until the fund is paid to the contractor.

Belknap Mfg. Co. v. Ohio R. Co. (C. C. A.) 271 F. 144. But we do not need to invoke that doctrine here, for without it the position of the appellee as trustee of the bankrupt contractor is no stronger, for, the bankrupt having abandoned the work and defaulted in the performance of the contract, and its surety having taken over the work, the latter, rather than the former, would be clearly entitled to the fund to the extent necessary to reimburse it for money expended in carrying it out, and the surety would in such case be bound to those doing work and furnishing materials.

It is therefore clear that, if in this case the surety had not only completed the work, but in addition had promptly paid all persons supplying labor and materials in its prosecution, it would thereby have been subrogated to all the original rights of the bankrupt to the extent necessary for its reimbursement and likewise subrogated to all the rights of the United States against the bankrupt to the same end, but that was not this case. The project was completed, and the government was satisfied, but $150,000 of debts contracted by bankrupt and surety in the completion of the work remained to be paid. The obligation of the surety was to pay these debts. If this obligation had been discharged, the fund now in the hands of the government would belong to it. But, since it was not complied with, and since the surety is, by reason of insolvency, unable to comply, it is a fair conclusion, we think, that, irrespective of the question whether the laborer and supply man had equitable liens on the fund, at least in the circumstances we have named, they should be considered by a court of equity as subrogated to all the rights of the surety, who admittedly had such a lien. In no case could the fund be considered as due to the bankrupt, and hence to its trustee, for the trustee has no greater interest than the bankrupt at the date of bankruptcy, and the bankrupt was not vested with any title which prior to bankruptcy it could have transferred. At the time of the bankruptcy, the only right which the bankrupt could assert to any of the fund in question was contingent upon there being a surplus after the reimbursement of its surety for the work done by it, and the obligation of the surety was not only to do the work, but to pay for the labor and materials, and admittedly the fund is insufficient for this. In view, therefore, of the insolvency of the surety and the excess of claims over the amount of funds, there is no one here with any claim or right to the fund, except appellants and

others similarly situated. See York Manufacturing Co. v. Cassell, 201 U. S. 344, 352, 26 S. Ct. 481, 50 L. Ed. 782; Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577. In Lyttle v. National Surety Company, 43 App. D. C. 136, which was a case in many respects similar to the one we are now considering, we held that, where a surety on a government contractor's bond has completed the work at a loss, the surety is entitled to be subrogated to the rights of the United States in respect to any fund in the hands of the United States arising out of the contract, and that in such a case, notwithstanding the intervention of bankruptcy, the fund will be turned over to the surety to the extent of its lien and not to the trustee in bankruptcy. The reason of this is, as we have endeavored to set out, that, when the default occurred, the surety's rights intervened, and, in those cases in which the surety avails of the right to complete the work, he is entitled to the entire balance of the fund in the government's hands, including the reserve percentages, to the extent necessary to reimburse him for the work which he must do under the contract. In such a case as we have instanced, the rights of the original contractor are absorbed or cease, and, having no rights, there is nothing to pass to its trustee in bankruptcy.

Here it is not the surety who is asking that the fund be awarded to it, but the persons who have furnished both to the original contractor and to the surety materials in the completion of the contract, and their rights are, in this case, superior to those of the surety, because of the insolvency of the latter. The bond which the surety provided being worthless, it would be bootless on their part to sue the surety as they have a right to do under the statute. In such case the fund remaining takes the place of the bond, at least to the extent that they have rights in it which are superior to the rights of the trustee in bankruptcy, who has neither the legal nor the equitable title to any part of the fund. Admittedly, the balance is not sufficient to pay the surety for money actually expended by it in the completion of the work. Admittedly, also, there are approximately $150,000 of unsatisfied claims for work done either for the account of the original contractor or the surety. This amount is a liability on both contractor and surety, and, both being insolvent, it would be inequitable and grossly unfair to say that the smaller amount remaining in the hands of the government should be administered for any other purpose than for their benefit, and, since it belongs

to them, it follows that the trustee in bankruptcy can have no claim to it. It is not property which, prior to the filing of the petition, the bankrupt could have transferred, or which could have been levied upon and sold under judicial process against it. Its default was the dead line establishing the rights of the surety, and in its insolvency the labor and material creditors, through subrogation or through the equitable lien existing in their favor, have a right to apply to the court having jurisdiction of the fund to determine their rights. There is nothing new in this, and it is what we decided in National Surety Company v. Lane, 45 App. D. C. 176. And there is nothing in Surety Company v. Owens in conflict.

On the whole case, we are of opinion that the court below erred in dismissing the bill, and the decree in that respect is reversed, and the cause remanded to the Supreme Court of the District of Columbia, with instructions to grant leave to appellants to substitute the present Secretary of the Treasury in place of Mr. Woodin and then to proceed, in such a way as the court shall deem most economical, to impound the fund and ascertain the liens existing against it.

Reversed and remanded.

HITZ, Associate Justice, took no part in the decision of this case.