**MORGENTHAU et al. v. FIDELITY & DE-POSIT CO. OF MARYLAND.**

No. 7032.

United States Court of Appeals for the District of Columbia.

Argued Nov. 11, 1937.

Decided Dec. 13, 1937.

Leslie C. Garnett, U. S. Atty., and Allen J. Krouse, Asst. U. S. Atty., both of Washington, D. C., for appellants.

Bynum E. Hinton and Alexander M. Heron, both of Washington, D. C., for appellee.

Before GRONER, STEPHENS, and MILLER, Associate Justices.

GRONER, J.

Durso, a resident of Massachusetts, entered into a contract with the United States for the construction of a government building in Vermont. Fidelity & Deposit Company executed the surety bond,[1] section

---

[1] The bond was executed in November 1933.

270, U.S.C.A., T. 40. Durso simultaneously entered into an agreement with the surety by which he assigned all retained percentages and all sums which might become due under the contract as collateral to secure the surety against liability on the bond. Durso was financially unable to complete his contract, and the surety advanced the necessary funds, as the result of which the contract was completed. In addition to more than $10,000 advanced by the surety to Durso and still due, the former paid to laborers and materialmen more than $5,000 to satisfy all unpaid claims for labor and material supplied in the work. As a result of these payments, nothing now remains due for labor and materials in the completion of the contract. After acceptance of the work, the United States ascertained that the retained percentage due the contractor was $5,343.29, and accordingly audited the claim and drew a voucher for that amount. The surety filed its bill against the Secretary of the Treasury and the Treasurer to enjoin them from paying to Durso the amount determined to be due him and asked that a receiver be appointed to collect the sum and to hold the same for the protection of the surety either by virtue of the assignment it held or by virtue of its equitable right through subrogation. There was an order of publication and personal service on Durso in Massachusetts by the United States marshal there.

The United States say that their sole interest in the case is to secure a valid acquittance in making payment of the claim, but they also say, first, that the appointment of the receiver is void because the District Court did not have jurisdiction of the defendant Durso and the proceedings are, therefore, in no wise binding on him for the reason that there is no res in the District of Columbia belonging to Durso which would form the basis for constructive service of process; and, second, that the surety has no lien or equitable interest in the fund by reason of subrogation or otherwise, and even if it has R.S. § 3477, as amended, 31 U.S.C.A. § 203, defeats its claim. We think the United States are wrong in all these respects.

First. Section 105 of the District of Columbia Code, 1924, D.C.Code 1929, T. 24, § 378, provides that publication or personal service of process outside the District of Columbia may be had against a nonresident in any suit involving a claim or demand to or against any real or personal property within the jurisdiction of the court. Here we have a case in which the United States hold a fund evidenced by a treasury check which, except that there is a lien against the fund, is payable to the contractor; and here also we have a case in which admittedly the contractor is indebted to his surety to the amount of the entire sum and more and has assigned as collateral security all his right, claim, and title to the fund. The check is in the hands of the disbursing officer of the United States in the city of Washington, and the United States are ready to deliver it to whoever is entitled to receive it. In such a case the federal courts in the District of Columbia have jurisdiction to appoint a receiver and through the receiver to distribute the sum to the person or persons entitled thereto. The check and the fund represented by the check are not claimed by the United States, and the officials of the government are charged with a ministerial duty to make payment on demand to the person to whom it is properly payable; and from this it follows as a necessary consequence that one who has an equitable right in the fund as against the payee may have relief against the officials of the Treasury through a mandatory writ of injunction or a receivership, so as to bind the payee and afford a proper acquittance to the government. As much as this was said in Houston v. Ormes, 252 U.S. 469, 40 S.Ct. 369, 64 L.Ed. 667.

Neither the doctrine announced nor the procedure pursued here is novel. The rule has been applied and the jurisdiction sustained time and again by this court. Jones v. Rutherford, 26 App.D.C. 114, was such a case as this. It involved a check drawn by the Treasurer of the United States in settlement of a claim against the government. An attorney had a lien upon the fund for services rendered in connection with its allowance. His widow and executrix brought suit in the District of Columbia against the payee of the check and the Treasurer of the United States. As the payee of the check was a nonresident of the District, resort was had to an order of publication against him. He appeared specially and moved to vacate the order on the ground that the court was without jurisdiction because of his nonresidence. We held that the check was per-

sonal property within the meaning of section 105 of the District of Columbia Code 1924 and that under that provision substituted service by publication was proper in a suit to enforce a lien against the property within the District of Columbia. It was insisted there, as it is here, that a claim against the United States has no locality in the District of Columbia even when recognized by an appropriation for payment, and since it is not property within the District of Columbia the person entitled to it cannot be summoned by constructive service. Answering this contention, we said:

"But the contention of the appellant is that a claim against the United States has no locality, and the debt, if it exists, is not property of the creditor within the District of Columbia; and, in support of this contention, he relies upon various decisions of the Supreme Court of the United States, which are supposed to establish it. We are of opinion that the proposition put forward by the appellant has no application to the present case, and that the decisions in question have no reference to such a condition as exists here. There is no question here of any claim against the United States by anyone, or of any indebtedness due by the United States to anyone. The claim and the indebtedness have been fully settled. The United States have drawn their draft for the payment of the indebtedness, which is the usual mode of payment, and they are ready to deliver that draft. It is not a question whether a claim against the United States, or an indebtedness by the United States, is property here or elsewhere. The question is as to the right to the manual possession of a draft drawn by the United States, and ready to be delivered to the person lawfully entitled to its possession. The question is whether that draft is property within the District of Columbia as between two rival claimants for the possession of it. The possession of this draft is the matter in controversy between the parties, and we are of opinion that it is property in this District. It certainly has no other situs, and if it is property at all it is property in the District of Columbia."

In Doerschuck et al. v. Mellon, 60 App. D.C. 383, 55 F.2d 741, 744, we restated and approved the doctrine in Jones v. Rutherford. There the suit was against the Secretary of the Treasury and a nonresident corporation to determine the right to a special fund deposited in the federal treasury to which the government made no claim. We sustained the jurisdiction of the District Court, saying:

"We are also of opinion that the court below was correct in overruling the plea to the jurisdiction filed by the Z. & F. Corporation. The suit instituted in this case is like Mellon v. Orinoco Iron Co., 266 U. S. 121, 45 S.Ct. 53, 69 L.Ed. 199, and Houston v. Ormes, 252 U.S. 469, 40 S.Ct. 369, 64 L.Ed. 667, and in those cases it was held that the payment by the government of a trust fund to the person entitled to receive it is a ministerial duty, the performance of which may be compelled by mandamus, and that, as a necessary consequence, where another has an equitable right in the fund he may have relief against the officials of the Treasury through a mandatory writ of injunction or a receivership. It is quite true that in such case the party who has been designated by compact or otherwise as the person entitled to the fund, but whose right to receive it is denied or disputed, should be made a party so as to bind him and afford proper acquittance to the government."

In that case, as in this, the nonresident defendant refused to appear and plead to the merits, but we held that under section 105 of the District Code the fund—in the present case converted into an audited draft—in the hands of the United States—to which they made no claim—was personal property within the District and that section 105, providing for publication or personal service of process outside of the District, conferred jurisdiction to pass upon the rights of the parties to the fund.

Pilger v. Sutherland, 61 App.D.C. 84, 57 F.2d 604, 607, was another case in line with Jones v. Rutherford. The case involved certain certificates of stock in American corporations seized by the Alien Property Custodian. Suit was brought to obtain possession of those certificates, and it was insisted that there was nonjoinder of indispensable parties, as to which we said:

"Undoubtedly all parties claiming the shares of stock held by the Custodian are necessary parties and must be joined in any litigation affecting the right to the property. If they cannot legally be made parties, the suit cannot proceed, but we think that section 105 of the District Code

(1924), D.C.Code 1929, T. 24, § 378, covers just such a case as this. It declares that publication or personal service of process outside the District may be had against a nonresident in any suit involving a claim or demand to or against any real or personal property within the jurisdiction of the court. There can be no doubt, we think, that the shares of stock which appellants claim were within the jurisdiction of the lower court because they were held by the Alien Property Custodian in Washington in the District of Columbia, and we think that the quoted provision of the Code gave the court complete jurisdiction to assemble all the necessary parties to the end that the right and title to the property might be finally determined. This is what we decided in Jones v. Rutherford, 26 App.D.C. 114, and repeated recently in Doerschuck et al. v. Mellon, 60 App.D.C. 383, 55 F.2d 741."

Lindberg v. Humphrey, 53 App.D.C. 243, 289 F. 901, and Mellon v. Jones, 60 App.D.C. 269, 51 F.2d 431, contain some statements which may be thought to conflict with what is said above, but those statements were not necessary to the decisions, and we now decline to adopt them. To the extent that they may be said to modify Jones v. Rutherford we now expressly overrule them.

Appellants urge upon us the contention that there is, no property belonging to Durso in the District because an undelivered check is not property. Undoubtedly as a general rule where private persons are concerned a check is not to be regarded as property until it is delivered; but we think the situation is different in the case of a government voucher. Whereas a private person may destroy a check before delivery and thus prevent its becoming property, a public officer has no right to destroy a government voucher. When a claim has been audited and the fund to satisfy it has been appropriated, the voucher therefor becomes tangible evidence of the government's indebtedness; and the disbursing officer of the government has no power to destroy it or, in fact, to do anything else with it save to deliver it to the payee—or, as in this case, to a receiver for the benefit of the person equitably entitled to the fund.

Second. The surety claims an equitable lien on the fund grounded upon the assignment made by the contractor as consideration for the execution of the bond. It likewise claims the fund by subrogation on account of the money paid out by it to complete the contract and discharge the claims.

We are of opinion that the surety's position in this latter respect is sustained by reason and authority. Its bond was that the contractor would complete the contract and pay promptly all persons furnishing labor and materials in connection therewith. The contractor failed to carry out his contract, and the surety advanced the money, and in addition paid all the labor and material bills still unpaid. It did this, not as a volunteer, but by reason of its contract entered into before the commencement of the work. Its advance to the contractor and its payment to the laborers and materialmen released the contractor from his obligations under the contract and, as the Supreme Court said in Henningsen v. U. S. F. & G. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547, likewise released the government from all equitable obligations to see that the laborers and supplymen were paid. It thereby became subrogated to the equity of the United States. Its action created in itself an equitable right which entitled it to demand and receive the balance due from the United States, and this equitable right, as the Supreme Court said in Prairie State Nat. Bank v. U. S., 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, arose from and related back to the date of the original contract of suretyship. Certainly there can be no real difference between the completion of the work by the surety, as was done in the Prairie Bank Case, and the furnishing of the money to the contractor after his default—as was the case here—to enable him to perform the contract. The same rule has been consistently adhered to by us in a number of cases: Lyttle v. National Surety Co., 43 App.D.C. 136; National Surety Co. v. Lane, 45 App. D.C. 176; Philadelphia Nat. Bank v. McKinlay, 63 App.D.C. 296, 72 F.2d 89; and recently in Moran v. Guardian Casualty Co., 64 App.D.C. 188, 76 F.2d 438, 439. In the latter case we said:

"In Lyttle v. National Surety Co., 43 App.D.C. 136, we held, in a case involving the rights of a surety who had paid the claims of laborers and materialmen under a bond similar in all respects to the one here, that the surety was entitled to be

636

subrogated not only to the rights of the contractor, but also to the rights of the United States under the contract. The former rights are here, and generally, bootless, but the latter include every right which the United States were capable of asserting against contractor had the surety not satisfied the obligations of the contract. We likewise held that this equitable right or lien existed in favor of the surety from the date of the bond. We said as much again in the recent case of Philadelphia Nat. Bank v. McKinlay, Trustee, 63 App. D.C. 296, 72 F.(2d) 89. In these circumstances, we have no doubt that appellee, as surety, is entitled to priority, notwithstanding the subsequent assignment of the fund by contractor; and this is true even though the assignment was given for an advancement of money used in the prosecution of the work. Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412. And see, also, Exchange State Bank v. Fed. Surety Co. (C. C.A.) 28 F.(2d) 485–488, where the cases are collected at great length."

In the last-cited case it was said that the equitable lien in favor of the surety on a bond to secure the performance of a contract for public work and the payment of labor and material bills therefor might arise ex aequo et bono or out of express contract and that there was no objection to its arising out of both courses simultaneously, and it was held to arise at the time of the giving of the bond.

The government contends, notwithstanding all this, that the surety has no valid claim on the fund involved because under R.S. § 3477, as amended, 31 U.S.C.A. § 203, the assignment was void. So far as a legal assignment is concerned, much may be said in favor of this contention, but we do not have to pass on this point because R.S. § 3477 has never been construed to apply to assignments by operation of law. Price v. Forrest, 173 U.S. 410, 19 S. Ct. 434, 43 L.Ed. 749; National Bank of Commerce of Seattle v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116; Houston v. Ormes, 252 U.S. 469, 40 S.Ct. 369, 64 L.Ed. 667. Accordingly, we may ignore the assignment by Durso to the surety and regard only the assignment which, on account of the situation of the parties, the law has effected.

Affirmed.