**MASSACHUSETTS BONDING & INS. CO.
v. FAGO CONST. CORPORATION et al.**

**Civ. No. 4312.**

United States District Court
D. Maryland.

Feb. 26, 1949.

Joseph A. Carey, of Washington, D. C., and James K. Cullen, of Baltimore, Md., for plaintiff.

Bert B. Rand, of Washington, D.C., for Fago Const. Corporation.

Bernard J. Flynn, U. S. Atty. and C. Ross McKenrick, Asst. U. S. Atty., both of Baltimore, Md., for Lt. Col. A. C. Welling.

CHESNUT, District Judge.

In this case a surety on a government contract is asserting a lien by equitable subrogation against a government check made payable to the principal, and now held by the local United States District Engineer. The claim of the surety arose from the fact that it has made large payments under the contract for labor and materials which the principal was obliged to pay but could not pay.

The case is very closely patterned on Morganthau v. Fidelity & Deposit Company, 68 App.D.C. 163, 94 F.2d 632, in the Court of Appeals, D.C., opinion by Judge Groner. The facts of the instant case very closely parallel those involved in

---

[4] S.Rept.No. 1719, 79th Cong., dated May 29, 1940, pp. 7, 8.

the cited case except as to names of the principal and surety and the amounts of money involved. There is, however, no question as to the jurisdiction in this case as there was in the Morgenthau case because here the surety and the principal are of diverse citizenship, the principal as defendant has been served with process and has answered without objection to the jurisdiction either general or as to venue. The citizenship of the resident District Engineer who was made a party, is not expressly alleged but no point is made as to that. In any event, he is a mere stakeholder of the fund. Here, as in the Morgenthau case, the principal and surety executed a bond for furnishing materials and performing the work of construction of Bath Flood Project (Cohocton River) Bath, New York, (near Buffalo) for the contract price of $417,860. The contract was dated May 15, 1947 and work has been physically completed and there is a substantial balance now due from the government to the contractor for the work done. Check for payment on account (not the final payment) in the amount of $41,319.47 has been issued by the government and is in the hands of the District Engineer for delivery to the person entitled to receive it. Prior to the execution of the government contract by the principal and surety, the former made written application to the latter to become surety on the contract, and therein the principal, the Fago Construction Corporation, agreed to assign to the surety percentages of payments retained by the government and other sums to come due under the contract, as security. The check in question is within this description.

About April 1, 1948 when the work was still far from complete, the principal informed the surety that it was unable to further finance the work and requested the surety to advance necessary moneys therefor. This the surety agreed to do and pursuant thereto a joint account was opened in a Buffalo bank and from time to time the necessary moneys were deposited therein by the surety and disbursed on checks jointly signed by the surety's representative, one Crafts, and a representative of the Fago Construction Corporation, one Bieniek. The amount and purpose of each payment was authorized in writing by the Fago Construction Corporation. The checks on the fund bear the printed name of the Fago Construction Corporation but the money disbursed was all furnished by the surety and the bank was instructed to honor checks on the fund only when signed by Crafts and Bieniek. Pursuant to this arrangement the surety has advanced and paid out on account of this contract a total amount of over $200,000. It was further understood and agreed that payments thereafter to be made by the government on the contract to the Fago Construction Corporation as principal were to be credited against these advances. To facilitate collection of such credits the principal notified the government to mail checks to it in care of Crafts; and a formal power of attorney was given Crafts by the principal and lodged with the government whereby Crafts was authorized to receive, endorse and collect the checks. The credits against the fund advanced up to the present time have reduced the amount to $191,253.62, of which amount $170,201.73 was applied for labor and materials alone. If the proceeds of the check for $41,319.47 are received and credited by the surety there will still be a present net loss in large amount, unless further payments hereafter due to the contractor are also received by the surety. The present case, however, deals only with the one check for $41,319.47.

Under closely parallel facts the Morgenthau case held that the surety was entitled by equitable subrogation to receive the proceeds of the check, and if necessary the court would appoint a receiver to receive the check, to collect it and to pay the proceeds over to the surety. Judge Groner, 94 F.2d 635, said: "We are of opinion that the surety's position in this latter respect is sustained by reason and authority. Its bond was that the contractor would complete the contract and pay promptly all persons furnishing labor and materials in connection therewith. The contractor failed to carry out his contract, and the surety advanced the money, and in addition paid all the labor and material bills still unpaid. It did this, not as a volunteer, but by reason of its contract entered into before the commencement of the work. Its advance to the contractor and its payment to the labor-

ers and materialmen released the contractor from his obligations under the contract and, as the Supreme Court said in Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S.Ct. 389, 52 L.Ed. 547, likewise released the government from all equitable obligations to see that the laborers and supplymen were paid. It thereby became subrogated to the equity of the United States. Its action created in itself an equitable right which entitled it to demand and receive the balance due from the United States, and this equitable right, as the Supreme Court said in Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 S.Ct. 142, 41 L.Ed. 412, arose from and related back to the date of the original contract of suretyship. Certainly there can be no real difference between the completion of the work by the surety, as was done in the Prairie Bank case, and the furnishing of the money to the contractor after his default—as was the case here—to enable him to perform the contract. The same rule has been consistently adhered to by us in a number of cases: Lyttle v. National Surety Co., 43 App.D.C. 136; National Surety Co. v. Lane, 45 App.D.C. 176; Philadelphia Nat. Bank v. McKinley, 63 App.D.C. 296, 72 F.2d 89; and recently in Moran v. Guardian Casualty Co., 64 App.D.C. 188, 76 F.2d 438, 439."

It will also be noted that in the statement of facts of the case, 94 F.2d at page 633, the court said: "Durso (the contractor) was financially unable to complete his contract, and the surety advanced the necessary funds, as a result of which the contract was completed".

It will also have been noted that the court said, from the opinion quoted above, that the surety advanced and paid the necessary moneys "not as a *volunteer*, but by reason of its contract entered into before the commencement of the work." (Italics supplied.) See also Lacy v. Maryland Cas. Co., 4 Cir., 32 F.2d 48; Martin v. Nat. Surety Co. 300 U. S. 588, 57 S.Ct. 531, 81 L.Ed. 822.

In the instant case the plaintiff prayed for a preliminary injunction and pending a hearing thereon obtained a ten-day restraining order, which, by consent of counsel for the defendant, was further extended until February 15, 1949, when the motion for preliminary injunction came on to be heard. At the hearing it was orally stipulated by counsel for the parties that the case should be regarded as having been presented on final hearing with respect to the particular check for $41,319.47, but not with respect to future possible checks from the government. Counsel for the Fago Construction Corporation submitted no evidence in the case in opposition to the plaintiff's evidence which fairly established the facts set up in the complaint; but counsel for the contractor opposed the granting of relief requested with respect to the present check on the ground, as contended for, that the advances made by the surety in this case were made by it as a "volunteer" and therefore the case was distinguishable from the Morgenthau case. The further facts on which this contention is based are only these. The plaintiff, the Massachusetts Bonding and Insurance Company, the surety, was also surety on another government contract for the Fago Construction Corporation. In addition to the sums advanced by the surety as previously recited, the surety also advanced through the bank account a certain amount of money, not stated, for the other contract. However the advances and figures for the two contracts were kept separate and distinct and the amounts above recited were particularly and specifically allocated to the one contract here involved. At or about the time the advances were thus made the surety also obtained from the principal certain mortgages referred to in the defendant's answer in this case, but not offered in evidence, said to have been further security for the repayment of the advances made; and the surety also took a separate personal indemnity agreement from Mr. Fago, the president of the Fago Construction Corporation. The value of this additional security, if any, did not appear in the evidence. In addition to the advances made by the surety for the particular Bath Project contract, the contractor also applied about $16,000 of its own funds for the completion of the work. The principal here asserts that from these facts it appears that in making these advances the surety was acting as a volunteer. No specific authority is advanced in sup-

port of this proposition and I do not think the contention is sound. The taking of the mortgage and the indemnity agreement by the surety as additional security was not shown to have been under any agreement that the surety would look only to the mortgage and indemnity agreement. In the absence of such an agreement it seems to be well settled that the surety did not lose its equitable lien by subrogation. See 50 C.J. Principal and Surety, p. 248; Leary v. Murray, 3 Cir., 178 F. 209, 212, 21 Ann.Cas. 868. Nor did the circumstances under which the advances were made in this case constitute the surety's action that merely of a *volunteer*. The legal concept of a volunteer in such a connection is that of one who makes a payment under circumstances where he has no legal or moral obligation to do so. See Vol. 44, Words and Phrases, Per. Ed., page 438 et seq., and 50 C. J. Principal and Surety, pp. 251 et seq.

Furthermore I find no material difference between the factual situation in this case and that in the Morgenthau case as stated in the opinion, where it was expressly held that the surety did not make the advances as a volunteer.

As the applicable law is so fully discussed with citation of the authoritative judicial decisions in the Morgenthau case by Judge Groner, and in the Lacy case by Judge Parker, it seems quite unnecessary to review it here in more detail.

For these reasons I conclude that the plaintiff is entitled to the relief prayed for and counsel may submit the appropriate decree promptly in due course.