**DOERSCHUCK et al. v. MELLON, Secretary of the Treasury, et al.**

No. 5402 (Equity No. 50033).

Court of Appeals of District of Columbia.

Argued Nov. 6, 1931.

Decided Dec. 21, 1931.

Louis Titus, of Washington, D. C., for appellants.

Leo A. Rover and John W. Fihelly, both of Washington, D. C., for appellee, Andrew W. Mellon.

Spier Whitaker, of New York City, and Lawrence A. Baker and Henry Ravenel, both of Washington, D. C., for appellee Z. & F. Corporation.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from decrees dismissing on the merits plaintiff's bill of complaint, and also the bill of complaint of a number of interveners asking the same relief. The facts as shown by the bill may be epitomized as follows:

Gustave Doerschuck, a citizen and resident of New York state, purchased in September, 1916, from Zimmerman & Forshay, bankers in New York, a block of German government bonds. (Appellants are his executors; we shall call them plaintiff.) The German government delivered the bonds to the Deutsche Bank in Berlin, Germany, for the account of Zimmerman & Forshay, where they remained to the end of the war, and, as the interest became due, the German government deposited the amount due with the Deutsche Bank in exchange for maturing interest coupons then detached. The fund so accruing remained in the Deutsche Bank to the credit of Zimmerman & Forshay. In the latter part of 1919, the Deutsche Bank delivered the bonds to Zimmerman & Forshay, and Zimmerman & Forshay delivered same to plaintiff and to each of the intervening plaintiffs in accordance with their respective interests, but the German enemy property custodian, for reasons which do not appear, refused to permit the money to the credit of the interest account to be drawn on. Zimmerman & Forshay, apparently in order to make complete delivery to its customers, then purchased German marks at the rate of 4 cents per mark, and opened a new account to their credit in the Berlin bank, drew on this account in favor of the purchasing bondholders for the amount of accrued interest due each bondholder, and delivered their check on this private account contemporaneously with delivery of the bonds.

In August, 1922, by Agreement between the United States and Germany (42 Stat. 2200), a commission was established to determine the claims of American citizens against the German government and German nationals under the terms of the 1921 Treaty between the United States and Germany (42 Stat. 1939), and the Treaty of Versailles.

To this commission Zimmerman & Forshay presented a claim for the value in United States money, as of a time prior to the German military collapse, of the marks put to their credit in the Deutsche Bank by the German government, but which had been at all times thereafter withheld, as we have noted, and as a result of which their value had greatly depreciated. In 1923, Zimmerman & Forshay were adjudged involuntary bankrupts in the Southern District of New York, and, in a composition effected with creditors, caused the defendant Z. & F. Assets & Realization Corporation of Delaware to be formed for the purpose of taking over by assignment certain of their assets for liquidation and distribution to their creditors, and among the assets so transferred was the claim of Zimmerman & Forshay pending before the German American Commission.

The commission in January, 1927, made an award to Z. & F. Corporation of $817,-134.84, with interest at 5 per cent. from January 10, 1920, which sum represented the value in United States money of the interest coupon account in the Deutsche Bank on the basis of 16 cents in United States currency for each German mark. A part of the fund so awarded was paid into the United States Treasury, and $400,000 thereof was paid by the Secretary of the Treasury to the Z. & F. Corporation; but no part was paid or distributed to the plaintiff or the other holders of German bonds. The bill alleges that another payment was about to be made to Z. & F. Corporation which would be distributed by it without regard to the plaintiff's rights, and that no recovery thereof could be had of the Z. & F. Corporation because it is without financial responsibility, and has no other assets than the claim to said fund. The bill then alleges that the award and the money paid into and to be paid into the Treasury on account of the award is a trust fund in which the Z. & F. Corporation has no interest by virtue of the assignment to it, except to the extent of the value at the time of the payment by Zimmerman & Forshay of the marks paid to the plaintiff and other German bondholders, and that the excess, amounting to 12 cents in American currency for each German mark, though allowed by the commission in the name of Zimmerman & Forshay, is a trust fund which belongs to plaintiff and the other holders of German bonds purchased from Zimmerman & Forshay; that the United States claims no interest in the fund; and that the payment thereof to the rightful own-

er by the defendant Andrew W. Mellon, Secretary of the Treasury, is purely a ministerial duty.

The prayer of the bill is that the Secretary of the Treasury be required to show cause why he should not be enjoined from paying over the balance of the fund to Z. & F. Assets Corporation, that a receiver be appointed to hold the fund pending the determination of the ownership, and that the court hold that the fund is a trust fund upon which plaintiff and others similarly situated have a lien, etc.

Stated in a little more condensed form, the bill alleges that Zimmerman & Forshay, prior to American entry into the World War, sold German bonds to various investors in the United States and received constructive delivery of the bonds at the Deutsche Bank in Berlin and actual delivery after the termination of hostilities but prior to the peace treaty between United States and Germany, but that delivery of the interest money, which had accrued and which belonged to the purchasers of the bonds as of the date of delivery of the bonds and which had been deposited in the Deutsche Bank to the credit of Zimmerman & Forshay, was withheld by the German government, so that Zimmerman & Forshay were only able then to make delivery to their customers of the bonds with the accrued interest coupons detached. That in these circumstances, Zimmerman & Forshay, without notice, voluntarily purchased German marks equal to the accrued interest and paid same to the respective bondholders, and, having thus voluntarily satisfied the interest requirements of the bonds sold by them, claimed the right, by purchase or subrogation, not only to the detained fund in bank to their credit, but as well to the claim for damages for its detention, and, as a result of such claim, the defendant Z. & F. Corporation, as their assignee, was awarded a premium of 12 cents per mark over the cost of the marks disbursed by them to the holders of the bonds.

The learned trial judge was of opinion that in these circumstances the bill filed by the plaintiff and by the interveners was without equity, because "when this payment was made, the plaintiff [neither] protested or made any claim that he was not receiving all that he was entitled to; nor that he was in any way misled or deceived by Zimmerman & Forshay; nor that he received any less than he would have received had the fund been turned over to Zimmerman & Forshay at the time when the latter gave him the check for interest."

We find ourselves unable to agree in this conclusion.

Plaintiff (and interveners) was just as much the owner of the German bonds purchased from Zimmerman & Forshay as though he had physical possession of them, and this, of course, is equally true of the interest coupons attached to the bonds. When, therefore, the German government paid the interest by depositing in the Berlin bank the necessary amount of money in German marks, the fund thereby created belonged to plaintiff and interveners, and, until it was paid over, Zimmerman & Forshay held it as trustees under the usual obligations of trustees. As between themselves and their customers, their duty under the circumstances was to hold it intact until permitted by the German government to withdraw it for payment to the persons entitled to receive it. This trust relationship of necessity forbade the use of the trust fund for the benefit of the trustee.

There is nothing alleged in the bill which would indicate any obligation on the part of Zimmerman & Forshay personally to discharge the obligations of the German government in the payment of the interest accruing on the bonds; nor is there anything to indicate demand on the part of its customers that it should do so. When therefore at the close of hostilities, and upon delivery of the bonds, the German government, in the exercise of its power, forbade delivery of the interest money to Zimmerman & Forshay, the advancement of same from their own funds was a gratuitous service which, without regard to the motive prompting it, could not of itself have the effect of transferring to them beneficial title to the fund or of subrogating them to the rights of parties entitled to it. It is doubtless quite true, as is urged by appellees, that the payment thus made gave the bondholders exactly what they would have received if Zimmerman & Forshay had been permitted rather than denied the right to draw upon the deposit in the German bank, and if it were also true that this was all the bondholders could in any case demand, they would not now be heard to complain; but it does not follow that the deposit by the German government of the interest money in a German bank without power of withdrawal was a compliance with its contract with its bondholders. The bill alleges the contrary, and shows that thereby a claim arose which has since been recognized and discharged by the payment of half a million dollars in excess of the actual value as of the date of payment by Zimmerman & Forshay.

We know of no rule of law, nor is any brought to our attention, which would justify us in saying that the agent or trustee of a fund, upon the payment of less than is due, acquires thereby the status of purchaser of the fund. On the contrary, the policy of the law in such circumstances, we think, is to hold the trustee accountable for the profits, and a court of equity will never permit him to derive profit by gift or purchase from the cestui que trust. The law itself, without regard to the motive, stamps the transaction as fraudulent. 1st Story's Equity Jurisp. (14th Ed.) § 445; Perry on Trusts and Trustees (7th Ed.) § 195.

In this case, as we have already seen, the Berlin bank fund belonged to plaintiff and other persons similarly situated. Their rights and interests could only be divested by some voluntary act of their own, and could not be made to depend upon the voluntary act of Zimmerman & Forshay in advancing, without notice to them, an amount of money equivalent to the principal of their deferred interest, and thereby take from them rights which inhered in the ownership of the fund, and yet just that and no less would result by giving effect to the claim of Zimmerman & Forshay to be subrogated to the rights of the owners of the fund to claim damages against the German government. It does not seem to us to make much difference what were the causes operating to justify the award made by the Claims Commission. Whatever they were grew out of the ownership of the fund and, as the fund itself was earmarked with the beneficial claim of the bondholders, the right, whatever its character or whence its source, to damages for its withholding, necessarily followed, as the shadow does the substance. See Oliver v. Piatt, 3 How. 333, 401, 11 L. Ed. 622.

We are also of opinion that the court below was correct in overruling the plea to the jurisdiction filed by the Z. & F. Corporation. The suit instituted in this case is like Mellon v. Orinoco Iron Co., 266 U. S. 121, 45 S. Ct. 53, 69 L. Ed. 199, and Houston v. Ormes, 252 U. S. 469, 40 S. Ct. 369, 64 L. Ed. 667, and in those cases it was held that the payment by the government of a trust fund to the person entitled to receive it is a ministerial duty, the performance of which may be compelled by mandamus, and that, as a necessary consequence, where another has an equitable right in the fund he may have relief against the officials of the Treasury through a mandatory writ of injunction or a receivership. It is quite true that in such case the party who has been designated by compact or otherwise as the person entitled to the fund, but whose right to receive it is denied or disputed, should be made a party so as to bind him and afford proper acquittance to the government.

In this case, Z. & F. Corporation was named as the party claiming to be entitled to the fund as the holder of the assignment from Zimmerman & Forshay, but the bill alleges that Zimmerman & Forshay were trustees and never had any right, title, or interest in or to the fund, and that it equitably belongs to plaintiff. These allegations are sufficient to put in issue the question of title, and to make it necessary that the Z. & F. Corporation should be made a party defendant, and, inasmuch as it is not a resident of the District of Columbia or doing business there, it ordinarily would not be suable there, and therefore the court below would have no jurisdiction of it unless it should voluntarily appear, and this we think it has not done. It pleaded to the jurisdiction, and, when its plea was overruled, it filed its answer, as was proper, but neither in that regard nor otherwise has it submitted itself to the jurisdiction of the court. However, section 105 of the District Code (Code 1924; Act March 3, 1901, chap. 854, 31 Stat. 1206; April 19, 1920, 41 Stat. 556, c. 153; D. C. Code 1929, Tit. 24, § 378), provides that publication or personal service of process outside of the District may be had against a nonresident in any suit involving a claim or demand to or against any real or personal property within the jurisdiction of the court. The bill in this case alleges that the Treasury has now on hand approximately $57,000 which the Secretary is about to pay to the Z. & F. Corporation, and, by reference to the War Claims Act of 1928 (45 Stat. 254), we observe that this money is a special fund to which the United States make no claim and assume no liability. It is not money of the United States, and never was, but is a special fund built up out of moneys paid over by the Alien Property Custodian from the sale of German government property and by moneys remitted by the German Republic for the specific purpose of paying the award.

It seems to us obvious therefore that, as to the fund thus created, the United States are not the debtor, and are neither paying nor undertaking to pay anything on their own account or from their own funds, but on the contrary have in their control a specially

earmarked account for a special purpose as to which they are under no other responsibility than that of the ordinary stakeholder. There is no contention, and can be none, that this fund is not now, and has not been at all times since its receipt by the Secretary of the Treasury, located in the District of Columbia. The bill so charged. In this aspect, we think it is clearly personal property within the District, and therefore that cases like those of Vaughan v. Northrup, 15 Pet. 1, 10 L. Ed. 639; U. S. use of Mackey v. Coxe, 18 How. 100, 15 L. Ed. 299; Wyman v. Halstead, 109 U. S. 654, 3 S. Ct. 417, 27 L. Ed. 1068, have no applicability. We think the situation is more nearly like that in Jones v. Rutherford, 26 App. D. C. 114, in which it was held that a check or draft in the hands of the Treasury and in which the United States have no interest is personal property within the meaning of section 105.

From this it follows that the decrees below must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.