**SPRUNT et al. v. DIRECTION DER DISCONTO GESELLSCHAFT OF BREMEN, GERMANY, et al.**

**No. 5579.**

Court of Appeals of the District of Columbia.

Argued Nov. 10, 1932.

Decided Jan. 3, 1933.

Rehearing Denied Jan. 20, 1933.

F. Eberhart Haynes and Herman J. Galloway, both of Washington, D. C., for appellants.

Thomas H. Creighton, Jr., of Washington, D. C., and Otto C. Sommerich, of New York City, for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellants were plaintiffs below, where they were defeated on a plea of the statute of limitations. We shall speak of them as the plaintiffs, and the respondent as the defendant.

Plaintiffs are citizens of the United States, and some of them reside and have their place of business in Wilmington, N. C. Defendant is a German corporation. The claim out of which the action arose resulted from transactions involved in financing sales and shipments of cotton from the United States to Germany during the summer of 1914. Plaintiffs allege that defendant breached its contract, as a result of which they sustained damages to the extent of $213,961.96. The declaration shows that during the year 1914 and prior thereto plaintiffs were engaged in the importation of cotton into Germany from the United States and the resale thereof to firms on the continent of Europe. As a means of carrying on the business, a London bank accepted drafts drawn by the plaintiffs as shippers. To provide security to the London bank, there was an agreement that a German bank would be the custodian of the cash, bills of lading, or warehouse receipts covering the cotton on which drafts had been accepted by the London bank. After the outbreak of the war, the German bank declined to deliver to plaintiffs the bills of lading or warehouse receipts for cotton then in Germany, whereupon a suit was begun in Germany to accomplish this, and a decree was entered, as the result of which plaintiffs got the receipts, sold the cotton, and deposited the proceeds in the defendant bank, which in turn agreed to hold the same for the account of the London bank, or, stated more accurately perhaps, to be bound to the London bank to the extent thereof. This deposit, or the greater part thereof, defendant invested in German war loans, which afterwards devel-

oped to be worthless, as a result of which, in March, 1922, plaintiffs, in order to avoid being sued, paid the London bank in discharge of the indebtedness by reason of the acceptance of the drafts. The action brought here is to recover the amount of this payment.

The declaration prayed that, pursuant to the provisions of section 15 of the Settlement of War Claims Act of 1928, which became section 30 of the Trading with the Enemy Act (October 6, 1917, c. 106, § 30; March 10, 1928, c. 167, § 15, 45 Stat. 273, 275, 50 USCA Appendix § 30), a writ of attachment issue against the property of the defendant which had been seized by the Alien Property Custodian and was then held by him pursuant to the provisions of the Trading with the Enemy Act. The writ was served with interrogatories, and the custodian filed his return, stating that he had a large amount of property belonging to the defendant. Thereafter there was an order of publication. On July 21, 1931, defendant filed a plea that the cause of action did not accrue within three years next preceding the commencement thereof. The court below sustained the plea, and this appeal was taken.

■ The question is, Was the action barred by the statute of limitations? The decision is within narrow limits, and turns upon whether section 30 of the Trading with the Enemy Act contains its own statute of limitations or whether the general statute of limitations contained in the code of laws of the District of Columbia is applicable. If the former, the decision below was wrong. Appellants also contend that, even if controlled by the District of Columbia statute, their action is brought in time, because the period does not begin to run until their right to maintain this particular action accrued.

The section (30) provides, in part, as follows: "Any money or other property returnable under subsection (b) or (n) of section 9 shall, at any time prior to such return, be subject to attachment in accordance with the provisions of the code of law for the District of Columbia, as amended, relating to attachments in suits at law and to attachments for the enforcement of judgments at law and decrees in equity. * * * "

The laws of the District of Columbia (section 341, Tit. 24, D. C. Code 1929) fix the statute of limitations for the bringing of an action within three years from the time the right to maintain the same shall have accrued. Defendant's position—that section 30 of the Trading with the Enemy Act is controlled by the District statute of limita-

tions—was sustained below. Our view is otherwise.

Shortly after the United States entered the war, Congress passed the act known as the Trading with the Enemy Act (chapter 106, 40 Stat. 411, 419, 420), in which it was declared, "Except as herein provided, the money or other property conveyed, transferred, assigned, delivered, or paid to the alien property custodian shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court." Section 9 (50 USCA Appendix § 9 note). And the quoted provision above has remained unchanged until the enactment of the act of 1928. There was, however, a further provision in section 9 by which an American creditor might file with the custodian a notice of his claim, and the President could in such a case order the custodian to pay the debt, with the right to the creditor, in the event of nonaction by the President, to institute a suit in equity in the District Court of the United States for the district in which the claimant resided to establish the debt so claimed. By amendment to the act, July 11, 1919, c. 6, 41 Stat. 35, jurisdiction of such equity suits under section 9 was given to the Supreme Court of the District of Columbia concurrently with the District Courts, and by Act approved June 5, 1920, c. 241, 41 Stat. 977, 980, the debts on which such claim could be made or suit brought were limited to those 'owing to and owned by the claimant prior to October 6, 1917." See 50 USCA Appendix § 9 and note. The Settlement of War Claims act of 1928, in section 15, amended the Trading with the Enemy Act by adding section 30 to that act, and by providing, as we have already seen, that any money or other property returnable under subsections (b) or (n) of section 9 should "at any time prior to such return, be subject to attachment in accordance with the provisions of the code of law for the District of Columbia." The effect of this last-mentioned provision obviously was to provide for an action at law with the right of attachment, and in that respect it enlarged all previous rights which Congress had theretofore provided.

But, if the effect of the language of section 30 is to apply the District of Columbia statute of limitations, it is perfectly clear that the purpose Congress had in view would be wholly abortive. In the report of the committee recommending the addition of section 30, it was stated: "Section 9 (a) of the trading with the enemy act, as qualified by

section 9 (e), provides the only recourse of a creditor, and these provisions are decidedly limited. Accordingly, your committee recommends that any money or other property returnable under subsection (b) or (n) shall be subject to attachment."

If, as we have seen, the claims which were permissible under section 9 must have accrued prior to October 6, 1917, the advantage which they were supposed to derive from section 30 would have been bootless if that section is subject to a three-year statute of limitations. We think this position is not sustainable, but that in the enactment of section 30 Congress intended to establish an entirely new policy in relation to the disposition of enemy property in the hands of the Alien Property Custodian, with the object primarily of providing ways and means to American creditors of enemy nationals for the collection of their debts. It is certainly within the power of Congress to determine how the money or property in the hands of the Alien Property Custodian shall be disposed of, and a construction of the section narrowing its benefits to that class of creditors whose claims arose within three years of the time when they sought to avail of its provisions would, it seems to us, defeat its entire purpose, and we think the reference to the District of Columbia attachment laws was merely a reference to the machinery by which the attachment should be had rather than the incorporation of a time limit other than that fixed by the section itself. To adopt the conclusion of the lower court would be to destroy the effect of the words used "at any time prior to such return," and make the same meaningless. Given their fair significance, these words are themselves a statute of limitations. As ordinarily understood, they would imply a right to action at any time before the removal of the property or money from the jurisdiction of the courts of the District of Columbia. In this view we think the plea of the statute should have been overruled.

But defendant insists that, if the court below erred in deciding in its favor on the limitation statute, the judgment of dismissal was right because this court is without jurisdiction of the parties. The ground of this is the nonresidence in the District of Columbia of the plaintiffs and defendant. We think there is nothing in this point. The Alien Property Custodian is within the jurisdiction of this court, and so also is the fund or property here involved. The return of the custodian shows that he holds in the Treasury of the United States at Washington a large sum of money formerly belonging to defendant. In such circumstances as this, we have several times maintained the jurisdiction of the trial court and of this court to proceed to a final adjudication. See McAdoo v. Ormes, 47 App. D. C. 364, affirmed Houston v. Ormes, 252 U. S. 469, 40 S. Ct. 369, 64 L. Ed. 667; Doerschuck v. Mellon, 60 App. D. C. 383, 55 F.(2d) 741.

Reversed.