**AMERICAN–MEXICAN CLAIMS BUREAU, Inc., v. MORGENTHAU, Secretary of the Treasury, et al.**

No. 67869.

District Court of the United States for the District of Columbia.

Jan. 6, 1939.

Whiteford, Marshall, Hart & Carmody, of Washington, D. C. (Harry L. Ryan, Jr., of Washington, D. C., of counsel), for plaintiff.

David A. Pine, U. S. Atty., and Harry L. Underwood, Asst. U. S. Atty., both of Washington, D. C., for defendants Henry Morgenthau, Jr., Secretary of the Treasury, and William A. Julian, Treasurer of the United States.

Thomas H. Patterson, of Washington, D. C., for defendant Herbert S. Ward.

Victor E. Cappa, of Washington, D. C., for defendant Louis O. Bergh.

LUHRING, Associate Justice.

The defendant, Louis O. Bergh, is a non-resident of the District of Columbia. No process has been issued against him. The other defendants have appeared and answered.

On October 10th, 1938, Mr. Bergh, appearing specially, filed the following motion:

"1. To dismiss the action on the ground that there is a lack of jurisdiction over the person of the defendant Bergh, in that

"A. The said defendant Bergh, as he is a resident of the State of New Jersey and is not within the District of Columbia, is not subject to service of process.

"B. There is no property or res within the District of Columbia to give the Court in rem jurisdiction.

"II. To dismiss the action on the ground that

"A. There is lack of jurisdiction over the persons of the claimants listed in paragraph "5" of the bill of complaint, and that

"B. Such claimants are indispensable parties, and that

"C. Assuming there were jurisdiction, such claimants could not be brought in by amendment of the bill because the claimants could not be joined in one action.

"III. To dismiss the action on the ground that there is a lack of jurisdiction over the subject matter, in that

"A. The claims of the plaintiff against the said claimants are null and void under section 3477 of the Revised Statutes, and

"B. The bill of complaint fails to show that the Court has any equitable jurisdiction over the subject matter."

The motion is supported by the affidavit of Mr. Bergh.

The object of the suit is to determine the rights and interests of the plaintiff and the defendants, Herbert S. Ward and Louis O. Bergh, to and in certain funds paid to the Government of the United States by the Government of Mexico under the Special Claims Convention of April 24, 1934, 49 Stat. 3071, providing for the en bloc settlement of special claims against the latter government.

The plaintiff alleges that it entered into agreements with a number of claimants whereby it agreed through its attorneys and agents to prepare and present and prosecute their claims to final adjudication in consideration of the payment to it by the claimant of a percentage of the money damages awarded to such claimant. It is further alleged that by the terms of this agreement, the plaintiff was given full power, either itself or through its duly authorized counsel, to directly collect such awards as may be made, and, as an incident thereto, irrevocable powers of attorney were given constituting and appointing certain named law firms to be the true and lawful attorneys for each claimant for the presentation and prosecution of their claims against Mexico before the Special Mexican Claims Commission created by the Act of April 10, 1935, 49 Stat. 149, c. 55.

The bill in paragraph 5 sets out a list of claims awarded by the Commission in favor of the therein named claimants, and alleges that such awards were the result of its services and the services of its attorneys rendered pursuant to its contract with each of such claimants.

The bill further alleges that the law firm of Marvin and Pleasant, originally employed by plaintiff and clothed with power of attorney, went out of existence and was succeeded by the firm of Turnbull and Bergh, of which firm the defendant Bergh is a member. That the defendant Bergh continued for a time to act and be associated in the prosecution of claims before the Commission on behalf of the plaintiff and claimants with whom it had contracts. It is alleged, on information and belief, that the defendant Bergh subsequently in some instances secured additional powers of attorney from the claimants and has proceeded to represent such claimants without respect to their agreements with the plaintiff, and further, on information and belief, that Bergh has recently made attempts to have payment of the awards mentioned in paragraph 5 made directly to him rather than in accord with the agreement made by such claimants with the plaintiff, and, on information and belief, that the plaintiff will then be unable to protect its interests in such awards as the funds will then be beyond the jurisdiction of this court.

■ In considering the motion of the defendant Bergh, it is well at the outset to dispose of the plaintiff's contention that by joining with the motion to dismiss for lack of jurisdiction a motion to dismiss for want of equity and because of the failure to join indispensable parties defendant, the defendant has waived the special appearance.

The case of Ryan v. McAdoo, 46 App.D. C. 117, and the recent case of Herzog v. Hubard, 68 App.D.C. 383, 98 F.2d 255, decided April 25, 1938, settle the question. Furthermore, Federal Rule 12(b), 28 U.S.C.A. following section 723c, provides that "no defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."

The motion to dismiss for lack of jurisdiction over the person of the defendant Bergh presents the question whether or not there is a res within this jurisdiction which will permit either substituted service or service by publication pursuant to the provisions of section 105, Code D.C.1924; Tit. 24, § 378, D.C.Code 1929. That section provides that such services may be had in case of non-residents "in all actions at law and in equity which have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real or personal property within the jurisdiction of the court."

The Convention, providing for the en bloc settlement of special claims, by Article 5· required the total amount of the special claims of the United States, as well as the deduction to be made therefrom, and the proportionate amount thereof to be paid, to be determined by a joint committee, whose report was to be accepted as final by both Governments.

The committee found that the amount to be paid by the Government of Mexico in settlement of the special claims comprehended in that Convention was $5,448,020.-14. This amount, according to Article 2 of the Convention, was to be. paid "at Washington, in dollars of the United States, at the rate of 500,000.00 (five hundred thousand dollars) per annum, beginning January 1, 1935, and continuing until the whole amount thereof shall have been paid." Provision was made for interest on the deferred payments.

On August 25, 1937, Congress by Joint Resolution (50 Stat. 783, c. 758) "relative to determination and payment of certain claims against the Government of Mexico," in the last preamble recited that "whereas payments on awards on the said Special Mexican Claims Commission from *funds paid to the Government of the United States by the Government of Mexico* under the Special Claims Convention of April 24, 1934, should not, *in justice* to *the beneficiaries,* be deferred until the question of the jurisdiction of the claims now pending before the General Claims Commission, * * *, shall have been finally determined * * *." It was then resolved in section 4 that "upon the certification to the Secretary of the Treasury of the awards of the Special Mexican Claims Commission, he shall proceed to make payments as provided for in section 9 of the Act approved April 10, 1935." (Italics ours.)

Section 9 of the Act of April 10, 1935 (49 Stat. 149, c. 55) required the Commission upon completion of its work to report to the Secretary of State among other things, "a list of all claims allowed in whole or in part, together with the amount of each claim and the amount awarded by the Commission." The Secretary of State in turn is required to transmit a certified copy of the list of claims allowed to the Secretary of the Treasury, "who shall, after making the deduction provided for in section 11 hereof [which has to do with the payment of the expenses of the Commission], distribute in ratable proportions, among the persons in whose favor awards shall have been made * * * according to the proportions which their respective awards shall bear to the whole amount then available for distribution, *such moneys as may have been received into the Treasury in virtue of the convention of April 24, 1934.* The Secretary of the Treasury shall follow like procedure with reference to any amounts that may thereafter be received from the Government of Mexico under the convention of April 24, 1934." (Italics ours.)

■ Under the circumstances here disclosed the money paid into the Treasury of the United States by the Government of Mexico is a trust fund. The beneficiaries of that fund are those claimants who have received awards at the hands of the Special Mexican Claims Commission. The Secretary of State and the Secretary of the Treasury are designated to administer the fund. The Government of the United States has no claim to it and makes none. Regardless of the outcome of this litigation, the Government will receive none of the fund. The claims are not claims against the United States within the meaning of 31 U.

S.C.A. § 203 (section 3477, R.S.). Furthermore, Congress in the preamble to the Joint Resolution, quoted above, regarded the fund as a trust fund. Observe this significant language, "whereas payments on awards of the said Special Mexican Claims Commission from funds paid to the Government of the United States by the Government of Mexico * * * should not, in justice to the beneficiaries, be deferred," etc.

■ The case of Doerschuck v. Mellon, 60 App.D.C. 383, 55 F.2d 741, is in point. There it appears that by agreement between the United States and Germany a commission was established to determine the claims of American citizens against the German Government and German nationals under the terms of the 1921 treaty between the United States and Germany (42 Stat.1939) and the Treaty of Versailles.

This commission made an award to the Z and F Corporation of $817,134.85. A part of the fund so awarded was paid into the United States Treasury, and $400,000 thereof was paid by the Secretary of the Treasury to the Z and F Corporation. The plaintiff and others, asserting an interest in the fund, filed their bill against the Secretary of the Treasury and the Z and F Corporation, a non-resident of the District of Columbia, praying for an injunction and the appointment of a receiver to hold the fund pending determination of its ownership, and to declare a lien in favor of the plaintiff and others similarly situated.

The defendant, Z and F Corporation, pleaded to the jurisdiction. This plea was overruled. The Court of Appeals held that Section 105 of the District Code 1924, Tit. 24, § 378, D.C.1929, applied.

Mr. Justice Groner, delivering the opinion of the Court, at pages 386–387, 55 F.2d at page 744, said: "It seems to us obvious therefore that, as to the fund thus created, the United States are not the debtor, and are neither paying nor undertaking to pay anything on their own account or from their own funds, but on the contrary have in their control a specially earmarked account for a special purpose as to which they are under no other responsibility than that of the ordinary stakeholder. There is no contention, and can be none, that this fund is not now, and has not been at all times since its receipt by the Secretary of the Treas-

ury, located in the District of Columbia. The bill so charged. In this aspect, we think it is clearly personal property within the District, * * *. We think the situation is more nearly like that in Jones v. Rutherford, 26 App.D.C. 114, in which it was held that a check or draft in the hands of the Treasury and in which the United States have no interest is personal property within the meaning of section 105."

The reasoning of the learned Justice is applicable here. The fund is clearly personal property within the District of Columbia, and, therefore, within the jurisdiction of this Court. In view of the allegations of the bill it was necessary that Bergh be made a party, and, as he is a non-resident, the provision of section 105 may be invoked. See, also, Morgenthau v. Fidelity & Deposit Co., 68 App.D.C. 163, 94 F.2d 632.

The motion to dismiss for lack of jurisdiction because "there is no property or res within the District of Columbia to give the Court in rem jurisdiction" is overruled.

■ The motion to dismiss for lack of indispensable parties must be sustained. Clearly the presence of these claimants to whom awards have been made is necessary and indispensable to a complete determination of the controversy. The plaintiff is granted ten days in which to file an amended bill.

■■ Since an amended bill is to be filed, the Court suggests that a more definite allegation be made concerning the contract or agreement between the plaintiff and the claimants showing the rights accruing to the plaintiff by virtue thereof. Attention is also directed to the allegation in paragraph 8 of the bill "that funds have been provided by Congress for payment of the same and that such payment will be made in the very near future." This allegation has been ignored by the Court following the rule that matters alleged which are contrary to judicial knowledge are not admitted by motion to dismiss. A cursory examination of the Convention of 1934 and the Act of April 10, 1935 and also the Joint Resolution of August 25, 1937 will disclose that the Congress has made no appropriation for the payment of these awards. This the Court judicially knows, and thus is able to determine that the fund in the Treasury was created for the specific purpose of paying the awards made by the Commission.