**Robert A. SCHMITZ, Plaintiff**

v.

**SOCIETE INTERNATIONALE, etc.,**

and

**Henry H. Fowler, Secretary of the Treasury, Defendants.**

**Herman A. SCHMITZ, Robert A. Schmitz,**

and

**Lloyd J. Vail, Executors of the Estate of Dietrich A. Schmitz, Deceased, Plaintiffs**

v.

**SOCIETE INTERNATIONALE, etc.,**

and

**Henry H. Fowler, Secretary of the Treasury, Defendants.**

Civ. A. Nos. 1900–65, 2091–65.

United States District Court
District of Columbia,

Jan. 19, 1966.

758

Ross O'Donoghue, Washington, D. C., for plaintiffs.

John J. Wilson, Washington, D. C., for defendant Societe Internationale, etc.

Robert J. Wieferich, Dept. of Justice, for defendant Henry H. Fowler, Secretary of the Treasury.

PINE, District Judge.

These two cases were consolidated for hearing on the motions respectively filed in each. The first mentioned case is brought by Robert A. Schmitz against Societe Internationale, etc., known and referred to herein as Interhandel, and the Secretary of the Treasury. The second mentioned case is brought by the Executors of the Estate of Dietrich A.

Schmitz, deceased, against Interhandel and the Secretary of the Treasury.

Before me are motions in each case, filed, respectively, by Interhandel and the Secretary of the Treasury, hereinafter referred to as Secretary.

These cases are the outgrowth of protracted litigation before this Court, the United States Court of Appeals for the District of Columbia Circuit, and the Supreme Court of the United States. It was finally brought to a conclusion in 1964 by the entry of a Stipulation of Settlement hereinafter referred to. The litigation involved the claim of Interhandel against the Alien Property Custodian to assets of Interhandel including more than 90 percent of the capital stock of General Aniline and Film Corporation, hereinafter referred to as GAF. These assets were vested in the Alien Property Custodian under the Trading With The Enemy Act,[1] under a claim that Interhandel was controlled by officers and stockholders who were engaged in a conspiracy with the German Government and German Nationals to conduct the business of GAF in their interest during the war with Germany. Interhandel brought an action in this Court, which became the subject of the protracted litigation above referred to, contending that the assets of Interhandel had been illegally seized and that the assets were not enemy tainted.

This is only a brief description of this litigation, but is sufficient for the purposes of the motions I am called upon to decide.

In the case filed by Robert A. Schmitz, individually, defendant Interhandel has filed a motion to dismiss and/or to quash the return of summons, and defendant Fowler, the Secretary, has filed a motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted.

In the case filed by the Executors of the Estate of Dietrich A. Schmitz, deceased, defendant Interhandel and defendant Fowler, the Secretary, have filed

1. 50 U.S.C. App. § 5(b).

motions identical to those filed by them in the other suit.

The first mentioned case, brought by Robert A. Schmitz, individually asserts in brief the following: In December 1958, while plaintiff was in Switzerland, carrying on negotiations between Interhandel and certain prospective purchasers of Interhandel's interest in GAF, he was told by Dr. Sturzenegger, the principal stockholder of Interhandel, that Interhandel had decided not to sell its interest in GAF until it had brought to a conclusion its claim against the United States Government for the return of the property, and would negotiate with the United States Government to this end through an agent of its own choosing. Plaintiff's cooperation was solicited by Interhandel and he suggested the name of Charles E. Wilson, hereinafter referred to as Mr. Wilson, as Interhandel's representative for this purpose. Plaintiff reported to Interhandel after conferences with Mr. Wilson that the latter could be persuaded to act only if he were offered full powers as trustee to negotiate a settlement of the dispute upon such terms and conditions as would appear honorable and just to him. Plaintiff's suggestion was accepted, and he was asked to attempt to bring about the trusteeship of Mr. Wilson. Dr. Sturzenegger agreed that Interhandel would pay plaintiff a fee for bringing about the Wilson trusteeship and suggested that 2% or 3% would be more acceptable to Interhandel's stockholders than 5% as suggested by plaintiff. Plaintiff did not consent and no agreement was reached regarding the amount or percentage to be paid to plaintiff, but the clear understanding was that such fee should not be less than 2% or 3% of the total sum obtained. Plaintiff then proceeded with his efforts to bring about the trusteeship of Mr. Wilson, and in 1960 Mr. Wilson accepted the trust powers, which he held until 1962. Prior to his acceptance of the trust powers it was necessary for the plaintiff to accomplish many tasks including convincing Mr. Wilson that he should accept. On or about October 26, 1959, Dr. Schaefer, the chief executive and chairman of the executive committee of Interhandel, agreed that Interhandel would pay plaintiff for his services 5% of any money which Interhandel might receive in settlement of its dispute with the United States Government, payment to be made when the settlement funds due Interhandel became available; and largely as a result of plaintiff's efforts the image of Interhandel was changed in United States Government circles and the most influential Government officials were persuaded that justice demanded the recognition of Interhandel's claim.

In 1964 a Stipulation of Settlement was entered into between Interhandel and the then Attorney General Robert F. Kennedy, in which they agreed that the GAF stock involved herein should be sold, and the sums to which under the Stipulation of Settlement Interhandel should be entitled should be deposited in an account to be maintained by the United States Treasury to be designated as Interhandel Corporation of Switzerland, payable only on the order of the Attorney General according to the provisions of the Stipulation. The stock was sold, and pursuant to the Stipulation proceeds of the sale, amounting to approximately $121,000,000.00 were deposited in the Treasury of the United States, of which according to the statement of counsel for defendant Secretary at oral argument, are now of a value of approximately $61,000,000.00. Plaintiff claims that he has an equitable lien on this fund to the extent of 5% of the amount recovered by Interhandel, namely, $145,000,000.00, or $7,250,000.00.

The second count is based on an alleged agreement between plaintiff and Interhandel that plaintiff would be compensated for the work performed by him and described in the first count. He alleges that no final agreement was reached regarding the amount or rate of his compensation, and claims that it had a reasonable value of $150,000.00, which after deducting $38,000.00 already paid

him on account makes the amount due and owing him $112,000.00.

Accordingly, plaintiff prays for an injunction against the Secretary from making disbursements of any part of this fund until provision is made for satisfying plaintiff's claims; that if necessary a Receiver be appointed to receive and hold $7,362,000.00 from the fund pending determination of plaintiff's complaint for a mandatory injunction against defendant Secretary, that $7,362,000.00 of this fund be declared to be a trust for the benefit of plaintiff and the amount found to be due him ordered paid him, and that judgment be entered against defendant Interhandel in the amount of $7,250,000.00, plus interest, and in the further amount of $112,-000.00, plus interest.

Interhandel is a corporation organized and existing under the laws of Switzerland, having its principal place of business in Basel, Switzerland. There has been no attempt to serve process on Interhandel in this jurisdiction, but instead service by registered airmail has been attempted under Rule 4, Fed.R. Civ.P.[2]

Plaintiff asserts jurisdiction of this case by reason of the provisions of § 11-521 and § 13-336, District of Columbia Code, (Supp. IV, 1965),[3] the general equity powers of the court *in rem* over a fund within the District of Columbia, and personal jurisdiction over defendant Secretary of the Treasury to control the exercise of his ministerial duty. There being no personal service on Interhandel relief cannot be obtained against it unless this action falls within the ambit

2. The pertinent sections of this Rule are as follows:
"(e) * * * SERVICE UPON PARTY NOT INHABITANT OF OR FOUND WITHIN STATE. Whenever a statute of the United States or an order of court thereunder provides for service of a summons * * * upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. * * *
"(i) ALTERNATIVE PROVISIONS FOR SERVICE IN A FOREIGN COUNTRY.
(1) Manner. When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: * * * (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served * * * * "

3. "Sec. 11-521. CIVIL AND CRIMINAL JURISDICTION.
(a) * * * the United States District Court for the District of Columbia,

in addition to its jurisdiction as a United States district court and to any other jurisdiction conferred by law, has all the jurisdiction possessed and exercised by it on January 1, 1964, and has original jurisdiction of all:
(1) civil actions between parties, where either or both of them are resident or found within the District; and * * *
(b) Except as otherwise specially provided, an action may not be brought in the District Court by original process against a person who is not resident or found within the District."
"Sec. 13-336. SERVICE BY PUBLICATION ON NONRESIDENTS, ABSENT DEFENDANTS, AND UNKNOWN HEIRS OR DEVISEES.
(a) In actions specified by subsection (b) of this section, publication may be substituted for personal service of process upon a defendant who can not be found and who is shown by affidavit to be a nonresident * * *.
(b) This section applies only to:
*      *      *      *      *
(6) actions for the enforcement of mechanics' liens, and other liens against real or personal property within the District; and
(7) actions that have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real or personal property within the jurisdiction of the court."

of §§ 11–521 and 13–336, D.C.Code, supra, and the general equity powers of the court *in rem* over a fund within the District.

Interhandel in its motion contends that the purported service is a nullity because it is predicated upon the assumed existence of a *res* in the District of Columbia, and upon a claim to or lien upon such *res* on the part of the plaintiff, none of which actually exists.

Defendant Secretary contends as a basis for his motion to dismiss, that this suit is an unconsented suit against the United States, that plaintiff has failed to join the Attorney General who is an indispensable party, that plaintiff is attempting to obtain judicial relief with respect to discretionary duties of an executive officer of the United States.

As I see it, there is a *res*, in a general sense, within the District of Columbia, namely, a portion of the proceeds of the sale of the GAF stock, under the Stipulation of Agreement, which proceeds have been deposited in an account maintained by the United States Treasury. But the question is whether it is a *res* which can be reached by plaintiff for the purpose of maintaining his suit against Interhandel and for the payment of his alleged claim. Under the Stipulation of Settlement,[4] a portion [5] of the proceeds of this sale of the GAF stock (which I shall hereinafter refer to for convenience as the "fund"), was deposited in the United States Treasury solely and entirely on the basis of the Stipulation of Settlement. The Stipulation provided that the fund "shall be held by the United States as security for the faithful performance by Interhandel of the indemnity obligations imposed upon it" by the Stipulation, and that "redemptions" of this fund "for Interhandel shall be made from time to time, as determined by the Attorney General, to the extent that the Attorney General determines" that it is "no longer needed to secure the faithful performance by Interhandel of the indemnity obligations imposed upon it," and provided generally that Interhandel shall indemnify and hold harmless the United States, the Attorney General and all other officers, agents and employees of the United States from any and all claims, actions and liabilities which might arise under certain provisions of the Stipulation, particularly claims of the Government of the Netherlands, relating to the shares sold and claims arising out of the operations of GAF while under its government control over a period in excess of 20 years and ending as a result of the filing of the Stipulation of Settlement. The Stipulation further provided that this fund shall be payable only on order of the Attorney General according to its provisions, and that defendant Secretary shall be entitled to rely on any order for payment by the Attorney General as being in accordance with the provisions of the Stipulation. It will thus be seen that the fund, in whole or in part, can only be disbursed by the defendant Secretary upon the order of the Attorney General, and that it is being held as an indemnity to satisfy the claims referred to in the Stipulation. There is no presently outstanding order by the Attorney General releasing the fund, and neither it, nor any part thereof, can be acquired by Interhandel until released by him.

Over the years there have been a number of actions of a similar character which have been filed in this court seeking to impress an equitable lien on a fund in the United States Treasury. Several have been taken to the Court of Appeals, and two to the Supreme Court. Among these cases are Houston v. Ormes, 252 U.S. 469, 40 S.Ct. 369, 64 L.Ed. 667; Mellon v. Orinoco Iron Company, 266 U.S. 121, 45 S.Ct. 53, 69 L.Ed. 199; Doerschuck v. Mellon, 60 App.D.C. 383, 55 F.2d 741; and McCormack v. Harrah, 60 App.D.C. 260, 51 F.2d 316.

---

4. Made a part of the Motions herein filed in this Court and filed in 1964 in C.A. 4360–48, of which this Court takes judicial notice.

5. Approximately one-half after substantial deductions.

It would needlessly burden this Opinion to discuss these cases separately, because the principle of law announced therein is unvarying and identical, and it is this: In order to impress an equitable lien upon a fund in the United States Treasury, it is necessary that there exist several elements, namely, the Treasury officials must be charged with the performance of no duty other than the ministerial duty of making disbursement of the fund. It must be such a duty as could be compelled by mandamus, or a receivership. The United States must not be in the position of a debtor or creditor, but the fund must be an especially earmarked account to which the Treasury officials are under no other responsibility than that of the ordinary stakeholder, and the United States must have no claim or interest in the fund.

■ Applying these principles to the instant case, there would seem to be no doubt that these necessary elements are lacking. Here the United States has a direct and real interest, namely, the retention of the fund to indemnify it and certain federal officials from liability arising out of the sale of GAF stock. Here the defendant Secretary has no right to make any disposition of the fund except upon the order of the Attorney General. Here the Attorney General is not a party to the suit, and if he were, clearly his duties in connection with the fund are not ministerial but involve discretion. Here neither the United States nor defendant Secretary is a mere stakeholder, but he is holding the funds for the benefit of the United States. Here the action is clearly one against the United States which has not consented to be sued.

The action, therefore, cannot be maintained because it fails to state a claim upon which relief may be granted, does not present the requisite facts for the establishment of an equitable lien and therefore does not provide the basis for substituted service of process as attempted.

■ Apparently realizing the unsupportable position in which he is placed under the law announced in the authorities above mentioned, plaintiff has filed a memorandum in which he states he is willing to postpone receipt of the moneys to which he is entitled until the Government is satisfied that such moneys can be disbursed without injury to its security interest in the fund. This proposed modification of plaintiff's suit would not alter its inherent character. It would still be one against the United States which has not consented to be sued, and is an attempt to assert a lien on, and thereby permit the court to acquire jurisdiction over, a fund, when, as and if it reaches a posture which might make it subject to a lien. I know of no juridical basis for such an action, but to support his position for a "postponed" lien which in effect, as stated, is the assertion of a cause of action which does not *now* exist, but which may exist at some future time, he has referred to two sections of the United States Code, namely, 40 U.S.C. §§ 308, 309, and 28 U.S.C. § 2410. On its face, 40 U.S.C. § 308 does not furnish the requisite consent. It provides that "[n]othing herein contained shall, however, be considered as recognizing or conceding any right to enforce by seizure, arrest, attachment, or any judicial process, any claim against any property * * * held * * * by the United States, or by any department thereof * * * or as waiving any objection to any proceeding instituted to enforce any such claim." Section 309 is based upon § 308 and, consequently, likewise does not furnish consent. This statute also involves the exercise of discretion by the Secretary of the Treasury.

■■ Nor does 28 U.S.C. § 2410 supply consent. Subsection (a) which contains the pertinent provisions of § 2410 does not authorize a suit against the United States unless there are jurisdictional grounds independent of the statute. Remis v. United States, 273 F.2d 293 (1st Cir. 1960). Furthermore, the section is limited in purpose and application to situations involving the quieting of title, or foreclosing of mortgages or

other liens on real or personal property and clearing real estate titles of questionable or valueless Government liens. See Quinn v. Hook, 231 F.Supp. 718 (E.D.Pa.1964), aff'd, 341 F.2d 920 (3 Cir. 1965). See also, United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960).

In view of the foregoing, it is unnecessary to reach the point raised by Interhandel that because of the denial of the contractual claims of plaintiff by sworn affidavits it is necessary, before a lien can attach, first to hold a hearing to determine the factual basis of their claim on which jurisdiction is predicated, under the authority of KVOS v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L. Ed. 183; McNutt v. General Motors Acceptance Corporation of Indiana, 298 U. S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; and Chase v. Wetzlar, 225 U.S. 79, 32 S.Ct. 659, 56 L.Ed. 990.

In the second suit brought by the executors of the estate of Dietrich A. Schmitz, deceased, against the defendants, plaintiffs, briefly stated, set forth that the deceased in 1930 was asked by Interhandel to represent it in all of its business interests in the United States, and was authorized by it to invest very substantial sums of money in various American corporations; that in 1929 he bought stock in the American I. G. Chemical Corporation, which later was merged with Agfa Asco Corporation and became GAF; that he performed numerous services for Interhandel to protect its interests after the vesting of the GAF stock, and that by his devotion to truth and faithfulness and loyalty to Interhandel he prevented the Government from obtaining evidence which would have defeated its claim for the return of the stock of GAF. They also allege that the deceased expended several hundreds of thousands of dollars in this connection, all inuring to the benefit of Interhandel, and that Interhandel promised to make him whole and to compensate him for his efforts on its behalf from whatever funds were ultimately recovered from the United States Government. They allege that the value of his services is $7,500,000.00, and that his losses amount to $2,500,000.00, and accordingly they claim that Interhandel is indebted to the estate in the amount of $10,000,000.00. They have prayers similar to those in the preceding case brought by Robert A. Schmitz, who is also one of the executors of this estate.

For the reasons hereinabove set forth in the suit brought by Robert A. Schmitz, individually, the same decision must be reached in this suit by the Executors of the Estate of Dietrich A. Schmitz, deceased.

Counsel will, therefore, present on notice orders in both cases dismissing the actions without prejudice to plaintiffs, if they are so advised, to present their claims in a new action if and when defendant Secretary has funds in his possession solely for distribution after release thereof by the Attorney General.