SEABOARD SURETY CO. v.
UNITED STATES.
No. 45519.

Court of Claims.
Oct. 7, 1946.

Bernard J. Gallagher, of Washington, D. C. (M. Walton Hendry, of Washington, D. C., on the brief), for plaintiff.

E. E. Ellison, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (Robert Burstein, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

The only question now pressed in this case is whether plaintiff, as surety on a payment bond given pursuant to the act of August 24, 1935, 49 Stat. 793, 40 U.S. C.A. § 270a et seq., and the requirements of a contract with defendant, had an equitable lien on the portion of the contract price represented by the retained percentage in the hands of defendant after plaintiff had, by reason of the default of the contractor, paid certain claims of laborers and materialmen and had completed the contract. This question arose by reason of the fact that before defendant made payment of the balance due under the contract, including the retained percentage, the principal contractor, who had been declared in default, became indebted to the Government for certain taxes and had on May 10, 1938, made a general assignment for the benefit of its creditors. Plaintiff claims that it acquired an equitable lien on the retained percentage prior to the general assignment of May 10 which was superior to the preference or priority claimed by defendant under Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191. On February 9, 1939, the Government under a claim of priority offset the amount of taxes due from the principal contractor against the amount of the retained percentage of $2,-800 and paid to plaintiff the balance there-

of, including $903.86, final contract balance. The amount of the offset for taxes due was $1,862.62, and plaintiff seeks to recover this amount.

No distraint was issued by defendant for the taxes, but defendant filed a claim with the trustees named in the assignment for the benefit of creditors, which it later withdrew on February 9, 1939, when it deducted the amount of said taxes from the balance due under the contract with the Peterson Construction Company, as set forth above.

The Peterson Construction Company (hereinafter sometimes referred to as Peterson) and the defendant, acting through the Bureau of Reclamation, Department of the Interior, entered into the contract in suit, No. 12r–6316, dated July 14, 1936. This contract called for performance of certain excavation and earthwork in connection with the All-American Canal System, Boulder Canyon project. The original contract price was $54,862.50, which appears to have been increased to ·$56,261.21.

In June, or in the early part of July, 1937, Peterson defaulted under the contract and under the payment bond by reason of its inability to pay the amounts due by it for certain claims for labor and material in the amount of $13,462.83. Peterson further defaulted in performance of the contract work, and its right to proceed further under the contract was terminated July 28, 1937. The plaintiff, as surety on the performance bond, completed the contract on August 17, 1937, and a contract balance of $3,703.86, which included the retained percentage of $2,800, remained due from defendant under the contract.

On August 8, 1936, Peterson entered into another and a much larger contract with defendant, No. 12r–6411 (which contract is not here in suit) relating to construction by plaintiff of certain washover chutes, drainage, inlets, and outlets for the All-American Canal System. Peterson also defaulted on this contract and plaintiff, as surety, paid out about $74,000 for labor and material claims thereunder, and also completed this contract. Upon such completion a balance of $26,807.85 remained due under this contract. Payment of the balance due under the contract in suit, No. 12r–6316,

was apparently held up to await completion of the other contract, No. 12r–6411.

The payment and performance bonds given under the contract in suit, and on which plaintiff was surety, were required by and given under the provisions of the contract in suit and pursuant to the provisions and requirements of the act of August 24, 1935, 49 Stat. 793. At the time Peterson defaulted on its payment bond, which was prior to its default in performance, plaintiff was compelled to pay and did pay at that time $9,675.88 on due and unpaid claims of laborers and materialmen against Peterson, and subsequently paid an additional amount of $3,786.95 for such claims. The total of the claims so paid was $13,462.83. After the default of Peterson on its payment bond, certain progress payments thereafter becoming due · from the Government to Peterson under the contract in suit for contract work performed by Peterson to date of default in performance on July 28, 1937, were delivered by the defendant to plaintiff, and the total of the progress payments so received by plaintiff was $7,685.00. In addition plaintiff received $4.46 from Peterson. The total of these amounts was used by plaintiff in making payments for Peterson's payroll and for materials to July 28, 1937, when the Government terminated Peterson's right to proceed, and thereafter plaintiff used the balance for the same purposes in completing the work. As above stated, plaintiff completed the unfinished work on August 17, 1937, and in doing so earned and in February 1939 received the unpaid balance of $903.86 and, also, $937.38 of the $2,800, retained percentage remaining in the hands of the Government upon completion and acceptance of the contract work. The balance of $1,862.62 of the $2,800, retained percentage, was applied by defendant through the Comptroller General on February 9, 1939, as an offset in satisfaction of that amount due the Government by Peterson for accrued taxes, penalties and interest representing capital stock tax for the fiscal year ending June 30, 1937, and Social Security tax for the calendar year 1937 and the first quarter of 1938.

After payment by plaintiff of labor and materialmen claims against Peterson and

after completion of the contract Peterson made a general assignment on May 10, 1938, for the benefit of creditors, and the properties and assets of Peterson Company thereupon passed into the hands of the trustees.

■ Upon the making of this general assignment there arose a statutory preference or priority under R.S. § 3466, 31 U.S.C.A. § 191, in favor of the Government in respect of the debt due it by Peterson for the taxes above mentioned. In addition to the statutory priority the Government, by giving notice and demand on October 20, 1937, and April 26, 1938, had acquired a lien under the act of March 4, 1913, 37 Stat. 1016, as to a part of this tax debt, and by further notice and demand acquired such lien as to the balance of the debt on May 17 and June 30, 1938, after the general assignment by Peterson. However, if, as plaintiff contends, the surety, by reason of its having paid the claims of laborers and materialmen under the payment bond, acquired an equitable lien on the retained percentage of $2,800 due under the contract prior to the dates on which the Government's lien attached and also prior to the general assignment of May 10, 1938, such lien of plaintiff would be superior to that of the Government and also superior to the Government's claim of priority. Brent v. President and Directors of the Bank of Washington, 10 Pet. 596, 9 L.Ed. 547. The right of the Government to preference or priority in payment of debts due it is purely statutory. United States v. State Bank of North Carolina, 6 Pet. 29, 8 L.Ed. 308. Such priority does not arise until there is a legal and known insolvency manifested by some notorious act by the debtor pursuant to law. Prince v. Barlett, 8 Cranch 431, 3 L.Ed. 614; Beaston, Garnishee of the Elkton Bank of Maryland, v. Farmers' Bank of Delaware, 12 Pet. 102, 9 L.Ed. 1017; United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638. The statute, § 3466, R.S., giving the United States priority creates no lien in favor of the United States. Beaston v. Farmers' Bank of Delaware, supra.

■ The United States possesses the general as well as the statutory right, R. S. § 236, 31 U.S.C.A. § 71, to apply any sum due by it to the extinguishment, in whole or in part, of any debt due to the United States on any other account by a person to whom the United States is indebted, but this is only the exercise of the common right which belongs to every creditor to apply the unappropriated monies of his debtor, in his hands, in the extinguishment of the debts due to him. Gratiot v. United States, 15 Pet. 336, 10 L.Ed. 759. The right of offset does not give the Government a superior legal or equitable claim to the funds in its hands, nor does such right of offset give the administrative settlement finality, and, "whether the amount so [administratively] fixed is due, in law and in fact, undoubtedly remains a question to be adjudicated, if properly raised in judicial proceedings, * * *." Illinois Surety Co. v. United States to the Use of Peeler et al., 240 U.S. 214, 219, 36 S.Ct. 321, 324, 60 L.Ed. 609.

■ In view of the facts in this case we are of opinion, as held in Schmoll v. United States, 63 F.Supp. 753, 105 Ct.Cl. 415, that plaintiff, as surety on the payment bond, did not acquire an equitable lien on the $2,800 retained percentage under the contract either by reason of the assignment of July 21, 1936, from Peterson to plaintiff, or by reason of payment by plaintiff of the claims of laborers and materialmen. The assignment of July 21, 1936, under the payment and performance bonds of any amounts becoming due under the contract as security to plaintiff, in event of default by Peterson, would, if valid, have given plaintiff an equitable lien upon the retained percentage, but this assignment cannot be held valid in the circumstances of this case under the decision of the court in Martin v. National Surety Co. et al., 300 U.S. 588, 594–598, 57 S.Ct. 531, 81 L.Ed. 822. The decisions of the U. S. Circuit Courts of Appeal as to the question whether in the absence of a valid assignment or statute, the proceeds of a contract with the Government are chargeable with an equitable lien in favor of laborers and materialmen and a surety who pays such claims, are conflicting. Martin v. National Surety Co., supra, 300 U.S. at page 593, 57 S.Ct.

531, 81 L.Ed. 822. See, also, Farmers' Bank v. Hayes et al., 6 Cir., 58 F.2d 34, 37; American Bonding Co. v. Central Trust Co. of Baltimore, 7 Cir., 240 F. 400; Lyttle v. National Surety Co., 43 App.D.C. 136; National Surety Co. v. Lane, 45 App. D.C. 176; Philadelphia National Bank v. McKinlay, 63 App.D.C. 296, 72 F.2d 89; Moran v. Guardian Casualty Co., 64 App. D.C. 188, 76 F.2d 438; and Pratt Lumber Co., Inc., v. T. H. Gill Co., D.C., 278 F. 783. But we are of opinion after examining all the authorities on the subject that the rule announced and applied in Schmoll, etc., v. United States, supra, that the surety does not acquire such an equitable lien under its payment bond, is the correct rule. No case has been cited, and we have been unable to find one in which the Supreme Court has held that an equitable lien accrues in favor of laborers and materialmen or to a surety in the event he pays such claims on the balance due under a contract. Cf. Mankin v. United States for the Use of Ludowici-Celadon Co., 215 U.S. 533, 30 S.Ct. 174, 54 L.Ed. 315; Title Guaranty & Trust Co. of Scranton, Pennsylvania, v. Crane Co., 219 U.S. 24, 31 S.Ct. 140, 55 L.Ed. 72; United States v. Ansonia Brass & Copper Co., 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107; Illinois Surety Co. v. United States to the use of Peeler, et al., 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609; United States Fidelity and Guaranty Co. v. United States, 209 U.S. 306, 28 S.Ct. 537, 52 L.Ed. 804; United States Fidelity & Guaranty Co. v. United States, 191 U.S. 416, 24 S.Ct. 142, 48 L.Ed. 242; American Surety Co. of New York v. Westinghouse Electric Mfg. Co. 296 U.S. 133, 138, 56 S.Ct. 9, 80 L.Ed. 105.

As between laborers and materialmen or a surety on a payment bond, and general creditors, including the Government, of the defaulting contractor, the equity of such laborers and materialmen, or the surety, in the balance due under the contract, including the retained percentage, upon completion thereof, would be superior to the equity of such general creditors to such balance. However, we are of opinion that the Government's statutory right of preference or priority for payment of debts due it when there is a legal insolvency, and also

the tax liens acquired by the Government for such debt of the defaulting contractor, supersede the equities of labors and materialmen and the surety in respect of any balance due under the contract.

On the facts in this case and under the authorities cited, the action of the defendant in applying $1,862.62 of the retained percentage due under the contract upon completion thereof by plaintiff, as surety, in liquidation of the tax indebtedness of the Peterson Construction Company to the United States was a legal and proper offset, and plaintiff is not entitled to recover. The petition must, therefore, be dismissed, and it is so ordered.

WHALEY, Chief Justice, and JONES and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.