AMERICAN AIRLINES, INC., Alaska Airlines, Inc., Continental Airlines Corp., Delta Air Lines, Inc., Eastern Airlines, Inc., Northwest Airlines, Inc., Pan American World Airways, Inc., United Air Lines, Inc., and Usair, Inc., Plaintiffs,

v.

Richard G. AUSTIN, Acting Administrator of General Services Administration, General Services Administration, and United States of America, Defendants.

Civ. A. No. 90–1394 SSH.

United States District Court, District of Columbia.

July 15, 1993.

See also 778 F.Supp. 72.

David A. Berg, Air Transport Ass'n of American, Washington, DC, Gordon Dean Booth, Jr., L. Dale Owens, Booth, Wade & Campbell, Atlanta, GA, for plaintiffs.

Theodore C. Hirt, Mark H. Murphy, Eric D. Goulian, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This complaint, brought by eight airline companies which provide transportation services to the federal government, seeks the return of several hundred thousand dollars the General Services Administration ("GSA") set off from payments due to plaintiffs from the federal government. Plaintiffs have moved for summary judgment. Defendants moved for summary judgment on Counts I, III, and IV of the Complaint, and plaintiffs cross-moved for summary judgment on Count III.[1] The motions have been fully briefed and are ready for disposition as to Counts I, III, and IV. There is no dispute over the facts necessary to resolve the motions, which are set forth below.

### I. Factual Background

On September 28, 1989, GSA sent each plaintiff a written demand to refund amounts previously paid by the government for allegedly unused tickets purchased for travel between January 8, 1985, and September 7, 1989. The demands totalled over $2,500,000.

Plaintiffs challenged the claimed indebtedness and asked GSA to produce the unused tickets and to allow plaintiffs an opportunity to inspect and copy government records of the relevant transactions. GSA was unable to provide copies or documentation of the unused tickets for which the refund demand was made. To support its request for the total amount, GSA instead calculated an estimate of the number of unused tickets by extrapolating from a statistical survey of unused tickets issued to the Army and the Air Force over a one-year period.

In response to plaintiffs' objections to the total request and the lack of documentation, GSA modified its demand, limiting the request to tickets purchased by the Army and the Air Force during 1985. The revised demand came to a total of $333,782. As evidence of the claim, GSA produced a limited number of unused tickets from this period, accounting for only a fraction of the amount demanded. GSA represented that the tickets produced were the only available records to support its demand and that all other allegedly unused tickets and corresponding government transportation request forms ("GTR's") were lost or irretrievable.

Plaintiffs filed this lawsuit on June 14, 1990, challenging the government's demands. The allegations presented in the three Counts of plaintiffs' Complaint that are presently before the Court are set forth below, along with the Court's analysis.

### II. Count I: Violation of Transportation Act Regulations

Plaintiffs assert in Count I that GSA's offset is unlawful because GSA failed to comply with the regulatory requirements for processing unused tickets. Defendants offer two arguments in response: first, that the regulations have no bearing on GSA's right to offset, which is governed by statute; and second, that the regulations bind the agencies to whom the tickets were issued, but not GSA as the collecting agency.

---

1. The parties have agreed to defer full briefing on Counts II and V of the Complaint until the Court resolves the motions as to Counts I, III, and IV.

Defendants' Motion for Summary Judgment on Counts I, III and IV, at 4 n. 3. Thus, only these three Counts are presently before the Court.

## A. Administrative Offset

The administrative offset procedure is authorized by 31 U.S.C. § 3716:

(a) After trying to collect a claim from a person under section 3711(a) of this title, the head of an executive or legislative agency may collect the claim by administrative offset....

*Id.* The statute prescribes procedures that must be followed, such as providing written notice and an opportunity for review, but does not offer any guidance as to what claims may be properly collected. In justifying the offset for this particular claim, GSA cites 31 U.S.C. § 3716(f), which provides that "[p]ayment for transportation ordered but not provided may be recovered by deduction or other means." *Id.*

GSA's authority under the statutes to collect payments by administrative offset. is clear. *See United States v. New York, N.H. & H.R.R.*, 355 U.S. 253, 254 & n. 1, 264, 78 S.Ct. 212, 213 & n. 1, 218, 2 L.Ed.2d 247 (1957). The right to exercise this authority does not, however, settle the substantive issue of the validity of the government's claim to the offset amounts. *Seaboard Surety Co. v. United States*, 67 F.Supp. 969, 971, 107 Ct.Cl. 34 (1946). The question of what constitutes "transportation ordered but not provided" is not illuminated by the statute authorizing offsets and must therefore be examined in the light of the regulations.

## B. Transportation Regulations

■ The regulations spell out the appropriate procedures for government agencies to follow in requesting tickets and for the carriers in matters of payment and services. According to 41 C.F.R. § 101–41.210–2, unused tickets must be exchanged or returned to the carrier, accompanied by standard government forms. GSA was unable to comply with the regulation in this case (and other instances) since the tickets and related forms for which GSA sought a refund have been lost.

Recognizing that the problem of lost or unreturned tickets made compliance with the regulation impossible, GSA decided to amend the regulations in order to avoid losing refunds for unused tickets. This led to the proposal of 41 C.F.R. § 101–41.210–5a, which would have placed the burden on the carriers to refund the government automatically for tickets issued but not used. This automatic refund would be required unless the carrier and GSA worked out an acceptable alternative process in accordance with 41 C.F.R. § 101–41.210–5c. If valid, these regulations would have made resolution of this case very simple, but because they have been struck down on procedural grounds, *American Airlines, Inc. v. Golden,* No. 3–86–0532–T (N.D.Tex. July 25, 1989) (Ex. 1 to Defendants' Motion To Dismiss), they are not dispositive. The question at issue is therefore what process the valid regulatory framework provides for allocating losses due to allegedly unused yet unproduced tickets.[2]

Without recourse to the stricken regulations, GSA is unable to justify the offset in this case. The language of the refund regulations is mandatory, requiring GSA and other agencies to follow the ticket return procedures they set forth. The regulation on unused or unreturned tickets provides:

Unused or unreturned tickets are those which have not been used for passenger service, exchanged, or returned to a carrier. Agencies shall demand the refund value of these tickets from carriers through the use of an SF 1170, Redemption of Unused Tickets. A separate SF 1170 must be prepared for each GTR.... Each ticket must be listed on the SF 1170. Unused or unreturned tickets purchased under a GTS account must be returned to the appropriate Federal agency office....

41 C.F.R. § 101–41.210–2. This language is unmistakably compulsory: the words "shall demand," "must be prepared," and "must be returned" require compliance.

The regulation designates the agencies responsible for keeping track of and recording unused transportation services. The agencies' failure to do so has led to GSA's difficulties with ensuring that tickets are either

---

**2.** The parties dispute the accuracy of the government's statistical estimate of the value of unused tickets, but have submitted to the Court the legal issue of the validity of the government's offset to be decided without regard to whether the amount claimed is legitimate.

used or refunded. Despite substantial efforts, *see* Defendants' Motion for Summary Judgment at 8–9, the government has been unable to improve agency compliance with the regulation.

In the absence of a regulation providing a separate refund procedure for unused tickets with no corresponding refund forms, there is no reason to hold the airlines responsible for losses due to government agencies' noncompliance. The purpose of the regulations is to ensure that the government has proof of unused tickets so that payments for unused services can be documented and recovered. This proof would entitle the government to documented amounts owed by the carriers and would justify use of the administrative offset to collect the funds due. In the absence of such evidence, however, and without a clear obligation imposed on the airlines (such as the method prescribed in the stricken regulations), collection is not justified. The regulations prescribe the method for determining what amounts are due to the government. Where they are not followed, the government does not have a right to collect by offset since no authorized method has been used to determine the amount demanded. Having failed to comply with the required regulations, GSA is left without the necessary evidence to support its refund request. The request is therefore invalid as contrary to the applicable and mandatory regulations.

## C. Function of GSA

■ The regulatory procedure for ticket refunds cannot be avoided merely because GSA, rather than the agencies it serves, seeks to recoup the refunds. GSA's ability to collect is derivative of the agencies' determination of amounts owed. The regulations provide a refund mechanism for the agencies to follow. In the event that the agencies themselves cannot collect on refunds that are requested in accordance with the regulations, GSA takes over and can collect via offset. GSA has authority to "[c]ollect from carriers by refund, setoff, or other means, amounts determined to be due the United States." 41 C.F.R. § 101–41.102(a)(3). GSA cannot arbitrarily determine what amounts are due,

however, but must follow some procedure to determine what may be collected. GSA's power to collect does not entitle it to circumvent the regulations that bind the agencies to which the collected funds are owed.

Defendants argue that this interpretation eviscerates "the utility of administrative offset as a back-up method of refund recovery," Defendants' Motion for Summary Judgment at 24. If the offset procedure cannot be used to recoup refunds in this instance, defendants argue, it serves no purpose. This argument overlooks all legitimate uses of the administrative offset. The offset procedure would be useful in a situation where GSA and the agencies did comply with the regulatory requirements but the carriers for some other reason failed to pay the amount "determined to be due," *see* 41 C.F.R. § 101–41.102(a)(3). For example, the agencies are required to report uncollected refunds by notifying and forwarding the appropriate SF 1170 forms to GSA. 41 C.F.R. § 101–41.210–4. The offset procedure enables GSA to collect speedily when carriers fail to make payments on this type of clearly established obligation. Prohibiting GSA to offset funds demanded in a manner inconsistent with the applicable regulations does not interfere with this and other proper uses of the offset procedure.

## III. Count III: Violation of Debt Collection Act

Plaintiffs assert in Count III that defendants have violated the Debt Collection Act, 31 U.S.C. § 3716(a)(2), by failing to make available for inspection and copying all records in the government's possession relating to the offsets. Defendants insist that GSA has turned over all documents that are either in its possession or reasonably retrievable. GSA has apparently complied with the Act to the best of its ability, but cannot fully comply because it does not have reasonably obtainable access to the missing tickets.

It could also be argued that GSA has in fact complied fully with the Act with respect to the claim made. GSA did not demand the actual amounts of unrefunded tickets, but requested payment based on a statistical estimate. Technically, since the estimate is what was claimed, the only records that must

be produced are those relating to the estimate.

This Count is moot in any event, however, by virtue of the Court's decision on Count I. Having invalidated the offset based on violations of the transportation regulations, there is no reason for the Court to require the government to produce records relating to the offset. Defendants have no obligations to provide for inspection and copying given that the claim itself is invalidated by this Opinion. Count III is therefore dismissed as mooted by the Court's disposition of Count I.

## IV. Count IV: Violation of Contractual Obligations

■ Plaintiffs allege in Count IV that defendants have violated the contractual obligations set forth on individual tickets. Each ticket includes a statement of the procedure that must be followed in order to receive a refund in the event the ticket is not used. Defendants admittedly have not complied with these procedures.

The actual tickets used by government employees contain the same stated restrictions included on tickets sold to regular commercial passengers. Nonetheless, plaintiffs issue tickets to the government with a quite different understanding of the contractual rights and obligations than normally apply to commercial passengers. As plaintiffs are aware, government tickets are issued in the context of the transportation regulations. It is clear from the facts of this case that plaintiffs knew that the regulations, not the provisions on the face of the tickets, would govern refunds. The airlines issue tickets in exchange for GTR's, which state and incorporate the terms of the regulations governing refunds. In this exchange, the airlines implicitly agree to the conditions set forth on the GTR's.

Furthermore, parties contracting with the government are presumed to have knowledge of the regulations that govern their contracts. *Maryland–National Capital Park & Planning Comm'n v. Lynn,* 514 F.2d 829, 833 (D.C.Cir.1975); *American Gen. Leasing, Inc. v. United States,* 587 F.2d 54, 58, 218 Ct.Cl. 367 (1978). It is clear from the facts of this case and from the plaintiffs' acceptance of the GTR's, as well as presumed as a

matter of law, that both the airlines and the government were bound not by the contract terms on the tickets, but by the applicable federal regulations. Plaintiffs' claim in Count IV therefore fails.

## Conclusion

Defendants did not comply with the mandatory regulations governing the refunds GSA demanded. Failure to comply has placed GSA in a position of being unable to determine what amounts, if any, are due from plaintiffs. Without this determination in substantial accordance with the regulations, there is no justification for GSA's offset of the demanded funds from payments to be made to the plaintiffs. Accordingly, the offset is invalid. This disposition of Count I renders the government's compliance with the Debt Collection Act irrelevant; Count III is therefore moot. Because the regulations and not the contractual terms on the tickets themselves govern refund procedures, plaintiffs' claim in Count IV is rejected.

The Court grants summary judgment to plaintiffs on Count I, dismisses Count III, and grants summary judgment to defendants on Count IV. A status conference will be scheduled to discuss further proceedings with respect to Counts II and V. An appropriate Order accompanies this Opinion.

## *ORDER*

Upon consideration of plaintiffs' motion for summary judgment, defendants' cross-motion for summary judgment on Counts I, III, and IV, plaintiffs' cross-motion for summary judgment on Count III, plaintiffs' motion to strike defendants' unsupported assertions, and the entire record, and for the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that plaintiffs' motion for summary judgment is granted as to Count I. It hereby further is

ORDERED, that Count III is dismissed in light of the disposition of Count I. It hereby further is

ORDERED, that defendants' motion for summary judgment is granted as to Count IV. It hereby further is

ORDERED, that plaintiffs' motion to strike defendants' unsupported assertions is denied.